IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1868, IN THE FIFTY-THIRD
YEAR OF THE STATE.

---

KNŒFEL v. WILLIAMS.

PLEADING.—*Abatement.*—Pleas in abatement must be verified by oath or affirmation.

TEMPORARY BAR.—*Rebellion.*—Suit for rent, commenced October 12th, 1863. Answer, that from January 1st, 1862, till institution of action, plaintiff had been a citizen of Tennessee, and had been during said period, and still was, actively engaged in levying war against the government of the United States, and in aiding, abetting and upholding the late rebellion against said government, and during all said time had been an officer in the army of the so-called Confederate States, and had not obeyed the proclamation of the President, made in pursuance of the act of Congress of July 17th, 1862. (12 Stat. at Large, 589.)

*Held*, that this answer was good in bar by force of said act of Congress.

*Held*, also, that the fact that the right of action might revive at the termination of the rebellion, is no objection to the rule that such pleas may be in bar of the action.

CONSTITUTIONAL LAW.—*Confiscation.*—The confiscation act of July 17th, 1862, is within the enumerated constitutional powers of Congress, and binding upon the state as well as the Federal courts.

VOL. XXX.—1

WAR POWER.—The law of nations imposes the only limit on the war power of the United States, and there is no difference in this respect between a foreign and a civil war.

JURISDICTION.—Collateral Proceeding.—The district courts of the United States had jurisdiction of a proceeding, under the act of 1862, for the condemnation and sale of property seized under said act; and errors in such proceeding cannot avail against a judgment therein, in a collateral proceeding in a state court.

APPEAL from the Floyd Circuit Court.

The appellee, who was the plaintiff below, sued the appellant for the rent of part of a lot numbered three, in the city of New Albany. He averred that he leased the premises to appellant, by a verbal agreement, from month to month, at the rate of twenty dollars per month, from July 1st, 1861. The suit was commenced October 12th, 1863.

The appellant answered in three paragraphs. The first was the general denial.

The second paragraph is as follows:—"The defendant answers the complaint of the plaintiff, and says that the plaintiff has not the legal capacity to sue in this action, in this, that from the first day of January, 1862, to the institution of this action, the plaintiff has been a citizen of the State of Tennessee, and has been during all said time, and now is, actively engaged in levying war against the government of the United States, and in aiding, abetting and upholding the present rebellion and insurrection against the government of the United States, and has been during all said time a colonel in the army of the so-called Confederate States; and said plaintiff did not, within sixty days after public warning and proclamation, duly given and made by the President of the United States, in pursuance of an act of Congress passed July 17th, 1862, entitled "an act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes," cease to aid, countenance and abet said rebellion, and return to his allegiance to the United States; but continued during all said period, from January 1st, 1862, to the present time, in levying war against the government of the

United States; wherefore the defendant prays judgment."
This paragraph was filed November 6th, 1864.

The third paragraph substantially avers that appellant
paid to appellee, before the commencement of the suit, all
the rent that was due and owing from him to appellee for
the premises described in the complaint up to April 30th,
1863, to wit, the sum of two hundred dollars, and he
pleads this payment in bar of so much of the appellee's
demand; and as to the residue, he avers that on said day
the said premises were seized by the United States marshal
for the district of Indiana, by virtue of a monition directed
to him out of the District Court of the United States for
the district of Indiana, which required him to seize and
take the same into custody, and upon said day, and in the
manner aforesaid, the said lease was determined, and he
was evicted from the enjoyment of said property under the
provisions thereof; that said marshal continued in the pos-
session of said property until November 4th, 1863, when a
decree was rendered in said District Court ordering said
premises to be confiscated and forfeited to the United
States, for the causes set out in the preceding paragraph;
and further ordering the same to be sold; that afterwards,
in the same month and year, the appellant purchased said
premises, under said decree of sale, for six hundred dollars,
and paid the marshal therefor; wherefore, &c.

A certified copy of the proceedings and decree of said
District Court was filed with, and made a part of, the answer.
Interrogatories were filed with the answer.

The appellee moved the court to strike out the second
paragraph, for the reason that the same was a plea of mat-
ter in abatement, and did not precede the plea in bar. The
court sustained the motion over appellant's exception.
The appellee then demurred to the third paragraph for the
fifth statutory cause, and he also moved to take from the
files the interrogatories accompanying the answers. The
demurrer was sustained over appellant's exception, and the

motion to strike out the interrogatories was also sustained over his exception.

There was a trial and finding for the appellee; a motion of appellant for a new trial refused, and the ruling excepted to.

The errors assigned are: 1. Sustaining motion to strike out the second paragraph of answer. 2. Sustaining the demurrer to the third paragraph. 3. Overruling the motion for a new trial.

GREGORY, J.—The second paragraph of the answer was not sworn to, and it can, therefore, only be sustained on the ground that it is in bar, and not in abatement. This paragraph is in bar of the action, by force of the act of Congress of July 17th, 1862. The fifth section thereof is as follows:—

"Sec. 5. *And be it further enacted,* That, to insure the speedy termination of the present rebellion, it shall be the duty of the President of the United States to cause the seizure of all the estate and property, money, stocks, credits, and effects of the persons hereinafter named in this section, and to apply and use the same and the proceeds thereof for the support of the army of the United States, that is to say: First. Of any person hereafter acting as an officer of the army or navy of the rebels in arms against the government of the United States.    *    *    *    *    *
Sixthly. Of any person who, owning property in any loyal State or Territory of the United States, or in the District of Columbia, shall hereafter assist and give aid and comfort to such rebellion; and all sales, transfers, or conveyances of any such property shall be null and void; and it shall be a sufficient bar to any suit brought by such person for the possession or the use of such property, or any of it, to allege and prove that he is one of the persons described in this section." 12 U. S. Stat. at Large, 589.

That the right of action may revive at the termination of the rebellion, is no objection to the rule that such pleas may be in bar of the action. In *Bell* v. *Chapman,* 10 Johns.

183, it was held that a plea of alien enemy, commorant abroad, was properly pleaded in bar, although the court say: "It is also admitted by the best modern authorities on the law of nations, that the plea of alien enemy is only a temporary bar to the recovery of private debts, and that the right of action returns with the return of peace."

It is objected that this law is unconstitutional. It is argued that this act is an act for the punishment of treason, and that it deprives the person implicated of a trial before the punishment. But we apprehend that confiscation acts stand on a much broader basis. Congress has power to "provide for the common defense and general welfare of the United States;" * * * "to provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions;" * * * "and to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof." Const. U. S., art. 1, sec. 8. The act in question is clearly within the powers thus conferred on Congress.

"A civil war," says VATTEL, "breaks the bands of society and government, or at least suspends their force and effect; it produces in the nation two independent parties, who consider each other as enemies, and acknowledge no common judge. Those two parties, therefore, must necessarily be considered as constituting, at least for a time, two separate bodies, two distinct societies. Having no common superior to judge between them, they stand in precisely the same predicament as two nations who engage in a contest and have recourse to arms."

There is no limit on the war power of the United States, except such only as is imposed by the law of nations. And in this respect there is no difference between a civil and a foreign war. Congress has as much power to "suppress insurrections" as to "repel invasions." Resort may be had to any means known and recognized by the laws of war.

It has been held, we think rightly, that this act is binding upon the state, no less than upon the Federal courts. *Norris* v. *Doniphan*, 3 Am. Law Reg. (N. S.) 471, per BUL-LITT, J., decided in the Kentucky Court of Appeals.

Did the court err in sustaining the demurrer to the third paragraph of the answer? This turns upon the validity of the judgment of the District Court. In *The Union Insurance Co.* v. *United States*, 6 Wall. (S. C.) 759, the Supreme Court of the United States, in a proceeding "to confiscate property used for insurrectionary purposes," under the act of August 6th, 1861, held that the Circuit Court had jurisdiction, under that act, of proceedings for the condemnation of real estate or property on land; and such proceedings might be shaped in *general* conformity to the practice in admiralty; that is to say, they may be in the form and modes analagous to those used in admiralty. But issues of fact, on the demand of either party, must be tried by jury; such cases differing from cases of seizure made on navigable waters, where the course of admiralty may be *strictly* observed.

The provisions of the act under which the property in question was sold are as follows:—

"Sec. 7. *And be it further enacted*, That to secure the condemnation and sale of any of such property, after the same shall have been seized, so that it may be made available for the purpose aforesaid, proceedings *in rem* shall be instituted in the name of the United States in any district court thereof, or in any territorial court, or in the United States District Court for the District of Columbia, within which the property above described, or any part thereof, may be found, or into which the same, if movable, may first be brought, which proceedings shall conform as nearly as may be to proceedings in admiralty or revenue cases, and if said property, whether real or personal, shall be found to have belonged to a person engaged in rebellion, or who has given aid or comfort thereto, the same shall be condemed as enemies' property, and become the property of the

United States, and may be disposed of as the court shall decree, and the proceeds thereof paid into the treasury of the United States for the purposes aforesaid.

"Sec. 8. *And be it further enacted,* That the several courts aforesaid shall have power to make such orders, establish such forms of decree and sale, and direct such deeds and conveyances to be executed and delivered by the marshals thereof where real estate shall be the subject of sale, as shall fitly and efficiently effect the purposes of this act, and vest in the purchasers of such property good and valid titles thereto."     *     *     *     *     *     *     *

The District Court had jurisdiction of the subject matter of the suit. The judgment is not void. The irregularities pointed out may be available on error, but do not sustain the objection to the validity of the judgment in a collateral proceeding.

The third paragraph of the answer is good, and the court erred in sustaining the demurrer thereto. The court also erred in sustaining the motion to strike out the interrogatories filed with the answer.

The judgment is reversed, with costs, and the cause remanded, with directions to overrule the motion to strike out the second, and to overrule the demurrer to the third paragraph of the answer, and also to overrule the motion to strike out the interrogatories filed with the answer, and for further proceedings.

*H. Crawford, J. H. Stotsenburg* and *T. M. Brown,* for appellant.

*T. L. Smith* and *M. C. Kerr,* for appellee.