RANDALL B. WILCOX *vs.* MARIUS S. DANIELS and JAMES CORNELL *et als.*

A., having a contingent equitable interest in certain realty, gave a quitclaim deed of his interest to B., and afterwards a warranty deed of his interest to C. Subsequently, when the contingent interest had become a vested one, A. gave to B. a deed confirming his former deed. C. gave notice of his claim to A.'s·trustee, who, notwithstanding, conveyed the

---

legal estate to B.   C.'s grantee then filed a bill in equity against B., claiming the realty by virtue of the warranty in A.'s deed to C.

*Held*, that the bill could not be maintained.

The first deed of A. to B. and the deed of A. to C. affected equitable contingent estates, and must be construed as operative in equity according to their intents, *i. e.* as executory contracts of sale. As B. obtained the legal title, neither A. nor C. nor C.'s grantee had equities sufficient to overthrow it.

It was claimed that A.'s first deed to B. was given to compound a felony.

*Held*, on the evidence, that this claim was not proven : the consideration of the deed might have been an honest desire to make restitution.

*Held*, further, that B.'s title rested on an executed contract, which, if illegal in its inception, would not, when executed, be disturbed.

*Held*, further, that B.'s title was a legal one; that this legal title was free from all illegality; and that B. only referred to A.'s first deed to show a holding for valuable consideration and under a claim of right.

BILL IN EQUITY to annul certain conveyances of realty, to remove a cloud upon title, and for partition.

*July* 9, 1885.  DURFEE, C. J.  On May 30, 1863, Andrew Jansen, of Providence, died leaving a will by which he devised several lots of land belonging to him in the city of Providence, as follows, to wit : To his wife during her life and widowhood, and after her decease, "in trust to such person as my wife may appoint by will, to hold said estate until my youngest child shall become of age, said trustee to appropriate the income thereof to the support and education of my three youngest children and their survivors until the youngest shall become of age, at which time said trustee shall . . . distribute equally, share and share alike, to all my surviving children."   Andrew Jansen died leaving five children, the youngest of whom became of age June 25, 1881. One of them subsequently died.   The widow died without appointing any trustee, February 12, 1871.   Trustees were appointed by this court, John Jansen, so appointed, being trustee in 1881. Andrew Jansen, Jun., one of the children, in the employ of James H. Perry and William F. Hardy, copartners as Perry & Hardy, had embezzled the moneys of his employers to the amount, according to his own confession, of about $1,500.   He was arrested on complaint of Hardy, and lodged in jail to await his trial thereon. He was afterwards released, and, January 14, 1874, gave to Perry a quitclaim deed of his interest in the land aforesaid, taking back an agreement by Perry to reconvey to him, at any time within seven years, on payment of $1,500 and interest at eight per cent.,

and thereupon the complaint was discontinued. On March 27, 1874, said Andrew gave a deed of one undivided fourth of said lots, with general covenant of warranty, to one David A. Brown, who, on the same day, gave a warranty deed thereof to the complainant. Afterwards Perry & Hardy failed in business and made a composition with their creditors, in the course of which Perry sold to the defendants, Daniels and Cornell, all his interest in said lots for $455, the instrument of sale being dated November 26, 1875. The three deeds first mentioned were recorded on the days of their dates. June 28, 1881, Andrew Jansen, Jun., gave a deed to the defendants confirming his former deed to Perry, and this deed of confirmation was recorded June 30, 1881. June 29, 1881, the complainant gave the trustee notice of his claim; but on July 11, 1881, the trustee transferred the estate to the defendants, Daniels and Cornell, in place of Andrew Jansen, Jun., and to three other surviving children of Andrew Jansen, deceased. The complainant brings this suit for the purpose of enforcing the claim which he makes to an undivided fourth of the estate.

The complainant contends that the estates devised to the children of Andrew Jansen, Sen., were only contingent remainders, and consequently that the quitclaim deed given by Andrew Jansen, Jun., to James H. Perry was ineffectual; whereas the deed to David A. Brown, being a warranty deed, took effect by estoppel as soon as the estate vested when the youngest child became of age. The estate given to Andrew Jansen, Jun., by the will of his father, was without doubt a contingent remainder; but it was also an equitable estate, and in a court of equity it must be dealt with on equitable principles. In *Bailey* v. *Hoppin*, 12 R. I. 560, this court, sitting in equity, sustained the conveyance of an equitable contingent remainder by quitclaim deed, on the ground that it was good against the grantor as an executory contract. The court said, p. 568: "In equity it is well settled that a deed which purports to convey property which is in expectancy, or to be subsequently acquired, or which is not of a nature to be grantable at law, though inoperative as a grant or conveyance, will be upheld as an executory agreement, and enforced according to its intent, if supported by valid considerations, whenever the grantor is in a condition to give it effect." It is true that there the language

of the conveyance was broader than here; but here the language is, " all the right, title, interest, property, claim, and demand which I now have," etc., which language is, in our opinion, broad enough to cover the grantor's contingent estate, and to demonstrate an intent to convey it. The complainant seems to suppose that the court in *Bailey* v. *Hoppin* rested its decision on the covenant of warranty. This is a misapprehension. The court in that case does comment upon the covenant, intimating that it would suffice to protect the grantee, even at law; but the court goes on to say that the case is a suit in equity, relating to an equitable estate, determinable on equitable principles, and then, in the language quoted, sustains the conveyance as a contract. We do not think, therefore, that the complainant can maintain his suit upon this ground, unless he can show that he has a better right than Andrew Jansen, Jun., himself would have if he had never conveyed to David A. Brown. We do not think this appears. The deed to Perry was instantly recorded, and it does not appear that either Brown or the complainant was ignorant of it when they took their deeds.

The complainant also contends that he is entitled to relief on the ground that the deed given to Perry was void because it was given for the purpose of compounding felony. We have no doubt that the deed was given in part in consideration of the withdrawal of the criminal complaint. There was, however, another consideration, namely, the moneys embezzled, which, for aught that appears, was entirely adequate. There is no proof of any unconscionable advantage taken. In *Anthony* v. *Hutchins*, 10 R. I. 165, such a deed was allowed to stand as security even when the grantor under the influence of his fears, transferred property which was supposed to be largely in excess of what he had taken. We do not see, therefore, how the suit could be maintained, even against Perry himself, if Perry had never conveyed or bargained away the estates. The suit, however, is against Daniels and Cornell, who were innocent purchasers for value without notice. They have the legal title. This court will not take it from them for the benefit of the complainant, unless the complainant can show a superior equity. We do not think he shows it. He stands, as we have seen, exactly as Jansen himself would have stood if he had not given his deed to David A. Brown.

After the foregoing opinion had been rendered, the complainant, July 14, 1885, asked for a re-argument of the case. The case was re-argued November 17, 1885, and the court thereupon gave the following opinion : —

*February* 13, 1886. STINESS, J. Upon a re-argument granted in this case, the complainant contends that the court erred, in its former opinion, in holding that, upon the facts shown, he was not entitled to a conveyance of the estate held by the defendants. It is agreed that Andrew Jansen, Jun., had a contingent, equitable interest in certain real estate, under the will of his father ; that he made a deed to Perry, grantor to the defendants, of that interest, before the estate became vested ; that subsequently he gave to Brown, grantor to the complainant, a warranty deed of the same estate ; that afterwards, upon the happening of the contingency, when the right in expectancy became vested, he made a deed to the defendants, confirming his prior deed ; and the trustee, in whom was the legal title, also conveyed to them the interest to which said Andrew would have been entitled under the will. The complainant now contends that, under his warranty deed, the equitable interest, which came to Andrew Jansen, Jun., at the happening of the contingency, immediately vested in him, the complainant, by way of estoppel ; that, as no such estoppel is created by a quitclaim deed, nothing passed or became vested under that deed, and the complainant, thus becoming the equitable owner of the share of Andrew Jansen, Jun., has the right to a conveyance of the legal estate. In *McCusker* v. *McEvey,* 9 R. I. 528, this court held that an after-acquired title will feed the estoppel created by a conveyance with warranty, and convert the same to an interest in the grantee, so as to conclude the grantor and all persons claiming under him. The purpose of this rule is to protect a party, who has taken an estate under the grantor's covenant of warranty, from a subsequent claim by the grantor, or those who hold under him, which, in effect, denies such covenants. But we do not think the rule is decisive in this case. At the date of the deeds, Jansen had only a contingent interest, which would not pass under a conveyance. The deeds operated only as agreements to convey the interest when acquired. *Bailey* v. *Hoppin,* 12 R. I. 560. The complainant seeks to enforce this agreement upon the

strength of his equitable title. We do not need to consider whether the covenant contained in the quitclaim deed can operate as an estoppel. Conceding, as a rule of law, the effect claimed for the warranty deed, against a subsequent conveyance by Jansen, or against the legal title, if that had come to him, it is to be noted that this case does not involve either of these conditions. The complainant says that, as equity follows the law, effect must be given to his deed by force of the warranty. While this is a familiar rule in proper cases, it is also a fundamental maxim that equity regards that as done which is agreed to be done. Hence, as stated in *Bailey* v. *Hoppin, supra,* a deed of a contingent, equitable interest, " though inoperative at law, will in equity be operative according to its intent." When Jansen gave the quitclaim deed he had the same contingent interest that he had when he gave the warranty deed ; and the former operates as a contract to convey that interest as effectually as the latter, for the intent to convey it is as evident in one as the other. The legal estate having come to the defendants, it cannot be divested, except upon the strength of the complainant's equitable claim ; and this, based upon an executory contract in the form of a warranty deed, is no stronger than the prior contract under which the defendants claim. If effect is to be given to a warranty deed on the ground of estoppel, the defendants are not bound by it, for they set up an elder claim. We know of no case or principle which, in equity, extends the operation of a covenant of warranty to cut off the rights of persons previously acquired. An estoppel arises from a deed prospectively and not retrospectively. If the covenant be treated as a covenant running with the land, by which the after-acquired title enures to the benefit of the purchaser as soon as it vests in the grantor, it is still to be observed that the legal estate in this case never vested in Andrew Jansen, Jun., and the complainant, at most, holds but an equitable interest. The question, then, which the complainant makes, is whether he shows such an equitable claim, superior to that of the defendants, as to entitle him to a conveyance of the legal title. In *Chew* v. *Barnet*, 11 Serg. & R. 389, it was held that the purchaser of an equitable title held it subject to the countervailing equities to which it was subject in the hands of the grantor. In that case, Wilson bought land of

parties before they had a title, agreeing to give a mortgage back. He then gave a warranty deed, under which the plaintiff claimed. Upon receiving the legal title afterwards, he executed the mortgage which he had agreed to give. The plaintiff claimed that the title enured to him under the warranty, while the defendants claimed under the mortgage. The court said : " The facts presented constitute the ordinary case of a conveyance before the grantor has acquired a title; in which the conveyance operates as an agreement to convey, which, when the title has been subsequently acquired, may be enforced in equity." " The conveyance of the legal title to the mortgagor was made expressly with a view to receive a mortgage from Wilson, in pursuance of his covenant entered into previously to his conveyance to Chew; and, with respect to equitable rights, the maxim of *prior in tempore, potior in jure* is always decisive where neither of the parties has a better right than the other to call for the legal estate." The court in this case did not recognize an estoppel, but treated both as equitable claimants. In *Jackson* v. *Bradford*, 4 Wend. 619, the plaintiff claimed under a judgment, and the defendant under a warranty deed executed subsequently, but before the grantor had acquired title. The defendant set up an estoppel. The court said : " The plaintiff here is a stranger in respect to the matter that is alleged as the estoppel, the deed. He is not a party to it ; his title is in no way derived from it. He relies on no act of the grantor performed subsequent to the execution of the deed to give validity to his title." Judgment was for the plaintiff. So Judge Story, in *Carver* v. *Jackson*, 4 Pet. 1, 83, in reference to a recital in a deed as an estoppel, said : " Technically speaking, it operates as an estoppel, and binds parties and privies ; privies in blood, privies in estate, and privies in law. But it does not bind mere strangers, or those who claim by title paramount to the deed. It does not bind persons claiming by an adverse title, or persons claiming from the parties by title anterior to the date of the reciting deed." Following this principle, the court, in *Lessee of Buckingham* v. *Hanna*, 2 Ohio St. 551, held an equitable title, prior in date to a mortgage with warranty, given when the mortgagor had no title, to be paramount, the legal title subsequently passing to the equitable owner by a decree of court. The court said : " Whether the

estoppel works upon the estate and binds an after-acquired title, as between parties and privies, or immediately passes the title to the grantee, in ordinary cases it is clear there is a limit to the operation, which controls it in the present case, and deprives the lessors of the plaintiff of all benefit from the doctrine in either point of view." "The defendant claims by an equitable title, paramount to R., and long anterior to the date of the mortgage to the lessors of the plaintiff. When the legal estate came to R. he held it as a mere trustee for E., and when it was taken from him by the decree, it went entirely unincumbered with any estoppel arising from the covenant in the mortgage." Whatever effect, therefore, may be claimed for a warranty deed, as between parties and privies, the defendants in this case, strangers to the covenant, are not estopped from setting up their elder claim; nor has the legal title, under which they hold, passed to the complainant under his warranty, for it was never in his grantor.

We do not see that the question of notice, actual or constructive, is important. The complainant assumes that the court held, in the previous opinion, that the registration of Perry's deed was notice of his claim of title. The court made no such ruling. Referring to the fact that Perry's deed was put on record, the court remarked that it does not appear that either Brown or the complainant was ignorant of it; thus indicating that no fact appears tending to show that the complainant is entitled to consideration in equity above the defendants.

The complainant also contends that, a part of the consideration for Perry's deed being illegal, the deed itself is void. There can be no doubt that a court will not enforce a contract between parties, founded upon an illegal consideration; and that, when the consideration is entire, the illegality of a part vitiates the whole. Perhaps the court said more in the former opinion than was warranted by the evidence, in saying: "We have no doubt that the deed was given, in part, on consideration of the withdrawal of the criminal complaint." While there is strong reason to believe that such was the fact, we can hardly say that it is very clearly proved. It does not appear that Jansen was arrested upon the complaint, although, from his pleading to it and giving bail, we may assume that he was arrested and that the officer neglected to make a re-

turn. The witnesses also refer to the fact that Jansen was in jail. Hardy was the complainant, but he says he did not discontinue the complaint and does not know who did. Jansen sent for Perry, both of whom are now dead. Jansen himself fixed the amount which would repay what he had taken. Hardy testifies that he understood that Jansen proposed to give the deed, and that if he gave the deed he was to be set at liberty. He also testifies that Jansen did not give the deed until after he came out of jail, and that he said he gave it to secure what he had taken, intending to raise the money to redeem the property. Now what promises were made to Jansen, what the actual consideration was, and how the complaint came to be discontinued, are matters of conjecture, not of evidence. Those who knew about the transaction are dead. Jansen's statement, after the deed was given, is consistent with an honest desire on his part to make restitution; and his voluntary confirmation of the deed afterwards, which he could not have been compelled to give if the consideration was illegal, affords a reasonable presumption that both the motive and the transaction were honest rather than corrupt. But, however this may have been, we are not asked in this suit to enforce an illegal contract. The cases to which we have been referred by the complainant are cases brought by parties to an entire contract, wholly or in part illegal, where the aid of the court is sought to enforce it. There is a wide difference between seeking to enforce an illegal contract and simply standing upon one that is executed.

Thus in *Thomas* v. *Cronise*, 16 Ohio, 54, the defendant had obtained title to land as the result of a bet. The plaintiff, an innocent purchaser for value, sought to have the deed set aside for illegality of consideration. But the court held as a universal principle, both in law and equity, that where an agreement is founded upon a consideration illegal, immoral, or against public policy, a court will leave the parties where it finds them. If executed, the court will not rescind it; if executory, the court will not aid in its execution." The reason for this is obvious. If a grantor upon such consideration could sell the property to a third party, who could avoid the prior deed, it would result in enabling the grantor indirectly to secure a benefit from his own wrong. In *Atwood &*

*Currant* v. *Fish,* 101 Mass. 363, it was held upon the same ground that a bill between the parties to a mortgage given for forbearance to prosecute for a felony would not lie. In *Crowder et al.* v. *Reed,* 30 Ind. 1, cited by the complainant, the plaintiffs sought to enforce a mortgage given to them by the defendant to secure them as sureties for her son, who had embezzled funds of his employer. The defendant set up that the mortgage was invalid because it was made upon an agreement to stifle prosecution. After verdict in her favor a new trial was granted, because, among other things, testimony was excluded tending to show that there was a legal and not an illegal consideration. In other words, the court held that the mere fact that a criminal prosecution had been stifled was not enough to avoid a deed, unless the deed was given, wholly or in part, upon that consideration ; and that the release of the son from liability to his sureties would be, if the sole, a sufficient consideration.

But the defendants in this case do not even claim to stand upon the equitable title created by the deed to Perry. They stand upon the legal title, which it is not pretended is tainted by illegality ; referring to the other only to show that they hold under a claim of right, for which, without wrong on their part or notice of wrong on the part of others, they have paid value. That is enough to stand upon, until a better title is shown. Does the complainant show a better title ? Assuming all that he claims to have proved, the case stands thus : Jansen gave two contracts to convey his contingent, equitable interest in real estate. One party secured the legal title as a result of his contract; the other did not. Whatever the form, both were agreements to convey, and, except in point of time, neither was superior in equity to the other. Even if based upon illegal consideration, the contract under which the defendants claim has been executed, and we cannot, upon that ground, set it aside in favor of one who took a subsequent agreement. We are of opinion, therefore, that the complainant makes no case for interference in equity, and that his bill must be dismissed.　　　　　　　　　　　　　　*Bill dismissed with costs.*

*Irving Champlin & Charles F. Baldwin,* for complainant.
*Simon S. Lapham & George T. Brown,* for respondents.