BROOKE and Others *v.* FILER and Others.

REVIEW OF JUDGMENT.— *Want of Jurisdiction of Courts over Suits between Citizens of States at War.*—An action was brought by a citizen of the State cf Virginia against a citizen of the State of Indiana, in a state court; on the 14th day of May, 1861, for an accounting of a long standing trust for the sale of a large quantity of lands, for setting aside contracts and conveyances for fraud, recovering money alleged to be due, enforcing liens, &c., and judgment was rendered on the 21st day of August, 1863, and a suit was brought by the plaintiff to review the proceedings and judgment on the 19th day of April, 1866.

*Held,* that the courts must take judicial notice of the fact that before, at, and after, the rendition of the judgment sought to be reviewed, Virginia, one of the Confederate States, was at war with Indiana, one of the adhering or loyal states of the Union; and that it was error of law to render the judgment in the proceeding which had been commenced in the state court, no jurisdiction remaining in said court for that purpose; and the plaintiff was therefore entitled to a review of the judgment.

APPEAL from the Marshall Circuit Court.

PETTIT, J.—It is proper to state that David G. Rose was originally one of the defendants in this suit, and that during its progress his death was suggested, and Filer and wife, being his heirs, were made defendants in his stead.

This was a suit brought to review the proceedings and judgment in a former suit in said court, under the statute, 2 G. & H. 279. The original suit was commenced on the 14th day of May, 1861, and final judgment was rendered on the 21st day of August, 1863, and this suit for review was commenced April 19th, 1866, less than three years after the rendition of the original judgment. The record of the original case is made a part of the complaint in this proceeding, and shows that that suit was brought for an accounting of a long standing trust for the sale of a large quantity of lands, for setting aside contracts and deeds for fraud, recovering money alleged to be due on sale of real estate, enforcing liens, &c., by citizens of Virginia against citizens of Indiana.

After setting out, at great length and circumstantially, the whole history of the transactions and the great wrongs the

appellants have suffered, and that they had no knowledge of the commencement, progress, or termination of the original suit until our late civil war was over, newly discovered facts, &c.; the complaint for review concludes as follows:

"In the latter part of 1860, or the early part of 1861, he does not remember which, the complainant, having previously assigned his interest under said contract to J. R. Tucker, of Richmond, in trust, to secure some debts that he owed to certain creditors of his in Virginia (which assignment has lately been surrendered to complainant, and is now in his possession and will be exhibited if required), sent by mail the rough draft of said contract, signed by himself as aforesaid, to a lawyer residing in Laporte, with a request to him to take such legal steps as he might think necessary, to force the payment by the said Rose of the amount due thereon. To this letter, the complainant never received any answer from the said lawyer, and the war between the United States, and the Confederate States breaking out soon after, the complainant never knew whether his said letter had ever been received by the said lawyer, or whether he had ever taken any legal steps to compel the payment of the money due on said contract, during the whole time the said war continued. In the month of May, 1865, the war being then ended, and complainant being still in ignorance as to the fate of his letter to the said lawyer, whether he had ever received it or not, or whether if he had, any or what proceedings had been instituted to recover the amount due by said Rose, upon said contract, wrote another letter to said lawyer, making these enquiries. To this last letter the said lawyer made no reply until some four months after it was written, when the complainant received the first information from him of the institution of a suit to recover the amount due on said contract, and of the decree now sought to be reviewed. In the meantime a correspondence had been opened by the complainant, with A. C. Capron, of Plymouth, Indiana, through which he was first informed of the proceedings in said suit and advised of the necessity of taking some steps immediately, to

have said decree reviewed and reversed. The complainant thereupon left his home in Richmond, and went to Plymouth, where he arrived in the month of March, 1866, and during his investigations, then made, into the character of the defense set up in said suit by the said Rose, and of the records of the counties in which the said lands are situated, and from conversations with persons acquainted with the value of the said lands, he first discovered the fraud the said Rose had practised upon him in procuring the said contracts of 1847 and 1850, and he now alleges that the consideration of the said last mentioned contract was grossly and wholly inadequate, and that both said contracts were made by him with the said Rose in utter and entire ignorance of the real or true value of the property affected by them ; that the said property was many times more valuable than it was represented to be by the said Rose at the time he procured the said contracts from the complainant; that, as will be seen by reference to the records of the deeds made by the said Rose, as the agent of the complainant, to purchasers of the said trust lands, the said Rose at the date of the said contract of the 18th of September, 1847, had already sold more than thirty thousand dollars worth of said lands, and then held in his hands, either as money or bonds, given for the purchase-money, more than twenty-five thousand dollars, of which he had never rendered to the complainant any proper account, and of which the complainant knew nothing at the time he made said contract; and the complainant now believes and charges that the advances referred to in said contract, as having been made by the said Rose to the complainant, and which he then believed to have been made from the said Rose's own money, were in truth made from the money received by him as agent, from the sale of the said trust lands; and the complainant says that he never would have made said contracts with the said Rose if he had been informed at the time of the true value of the interests he had purchased of the bank and the said Cabbell, and of the quantity of land that had been sold by the said

Rose, as his agent, and the amount of the purchase-money the said Rose then held in his hands, and that the advances made to him as aforesaid had really been made out of his, complainant's, own money; and that the said Rose, by with-holding from him this information, which it was his duty as his agent to have given him, and by his false representations hereinbefore referred to, fraudulently procured the said con-tract to be made with him by the complainant. The said Rose continued to sell portions of the said trust lands, and the lands owned by the said complainant, individually and joint-ly with the said Tucker, from the date of the contract of 1847 until that of July, 1850, without rendering to said complainant any account of his transactions, as his agent, or remitting him any money, or giving him any true informa-tion of the quantity or value of the lands so sold by him and (as will also appear by reference to the said deeds of record in said counties) he had then sold more than fifty thousand dollars worth of said lands, and there was then due from him, on account of his sales of said lands as agent of the complainant, as trustee, and in his own right, more than thirty thousand dollars, after allowing a sum suffi-cent to pay the debt to the said Fagen, and to reimburse to himself the amount he had advanced to the said com-plainant, as hereinbefore mentioned. Besides this, as will also appear by reference to said records, there were more than twelve thousand acres of said trust lands, and more than half the lands owned by the said complainant, individ-ually and jointly with the heirs of the said Tucker, remain-ing unsold, when said contract of 1850 was obtained from said complainant, which have since been sold by said Rose, or taken under execution against him, to an amount exceed-ing eighty thousand dollars; and the complainant avers that it was untrue, as represented by the said Rose, at the time of the making said contract, that the trust and other lands then remaining unsold were of small value and difficult of sale, or that the purchase-money could not easily be collec-ted; on the contrary, the complainant avers that the said

trust and other lands were at all times, after they were placed in the hands of the said Rose, as his agent, of vastly more value than they were represented by him to be, to the complainant, and that the information possessed by the said Rose, as to their real value, was purposely withheld from him by said Rose, with the intent to purchase his interest at a smaller price and upon more favorable terms to himself than he could otherwise have purchased it, the said Rose well knowing at the time of said contract that the complainant had no information as to the true value of said property, or of anything respecting it, but such as he had given him as his agent, and that complainant had neither sought nor obtained any such information from any other source.

"The said complainant further avers that the said lawyer, neither at the time of the institution of the said original suit, nor at any time during its progress to the decree complained of, had any communication, written or verbal, with either of the complainants, or any correct knowledge of the facts of the case, as hereinbefore stated, or of the nature of said contract. That at the time he was employed as the attorney of said Brooke & Tucker to institute a suit in some court of the State of Indiana having jurisdiction in the case, against the said Rose, to recover the sum due on said contract, they were both citizens of the State of Virginia, residing in the city of Richmond in that state, as the said lawyer and the defendant well knew, and the said Rose and the said lawyer were citizens and residents of the State of Indiana; and that peace then prevailed in all parts of the United States, but that when the said original complaint was filed in this court a civil war had begun between what was then called the Confederate States of America, of which Confederacy the said State of Virginia was a member, and the government and the people of the United States, of which Indiana was a member. The armies of the two sections were in hostile array, each against the other, and each section had recognized the other as a belligerent power, to be governed in their intercourse, and in respect to the

duties and obligations of the citizens of each, by the laws of nations (all of which was well known to the said lawyer and to the defendants) when in a state of war; and that, according to the well recognized principles of said laws, the authority given by the said complainants, Brooke & Tucker, to said lawyer to institute said suit was either suspended or revoked and annulled; that the said civil war continued to be waged between the said government of the United States and the said Confederate States during the whole progress and proceedings in the said suit in this court, and when, and until after the said decree was rendered; and that during all that time, the said Brooke & Tucker were both of them residents of the city of Richmond and State of Virginia, one of the said Confederate States, and the said Rose and the said lawyer were citizens and residents of the State of Indiana, one of the United States, as was well known to the said lawyer and said defendants; that in the then state of public affairs, the said complainants, if it had been possible for them, or either of them—which it was not—to have been personally present at the time said original complaint was filed by the said lawyer, would not have been permitted by law to institute said suit, and the said lawyer could have no authority, as their agent, to do for them in their absence what they would not have been permitted to do if present. The complainant therefore insists that as the said suit was instituted, continued, and ended without any authority from them or either of them to the said lawyer to appear as their attorney, they ought not to be held bound by the decree which has been rendered therein; and they pray that the same may be annulled and set aside. In consideration whereof, the complainants ask the court to review said judgment and decree against them as hereinbefore stated, and to reverse said judgment and decree, and adjudge the same to be null and void, and to restore the said complainants to their conditions, as regards said contract with said Rose, in which they stood before said decree was rendered. And will your Honor further order, adjudge, and decree that the

said contracts with the said Rose of the 18th of September, 1847, and July, 1850, were procured by fraud, and that the same be set aside and your complainants remitted and restored to all their rights in respect to all the property embraced in said contracts in the same manner and to the same extent as if said contracts, had never been made; and will your Honor further order, adjudge, and decree that the deed made by the said Rose to the said Everhart for the lands designated therein and conveyed by the said Rose as the pretended agent of the complainant, was and is null and void, and that the same be delivered up to be canceled, and that all the right, claim, and title of the said Everhart, and all persons claiming under him, be vested in and conveyed to the complainant; and will your Honor grant such other and further relief to the complainant as the justice of the case demands."

We take judicial notice that before, at, and after, the rendition of the judgment sought to be reviewed, Virginia, one of the Confederate States, was at war with Indiana, one of the adhering or loyal states of the Union. We hold that it was error of law, the court having no legal power to do so, to render the judgment, and this entitles the party to a review of it. All the authorities, without a dissent, and they are numerous, concur in this. In *Livingston* v. *Jordan*, 10 Amer. Law Reg. (N. S.) 53, Chief Justice CHASE says: "The jurisdiction of the state court over the plaintiffs, whatever it was, terminated when the civil war broke out." *United States* v. *Grossmayer*, 9 Wall. 72; *The Kanawha Coal Company* v. *The Kanawha and Ohio Coal Company*, 7 Blatchf. 391, and cases there cited; *Knœfel* v. *Williams*, 30 Ind. 1 ; *Perkins* v. *Rogers*, 35 Ind. 124. The authorities are uniform on this question.

Under the facts shown in the complaint for review, the appellants were entitled to the relief sought. The appellees have not furnished us with a brief, but we do not wonder that they have not put themselves to that trouble.

The judgment is reversed, at the costs of the appellees;

cause remanded, with instructions to the said circuit court to overrule the demurrer to the complaint for review, and for further proceedings, &c.*

*S. I. Anthony, F. Church, S. E. Perkins,* and *S. E. Perkins, Jr.,* for appellants.

*J. Bradley, L. A. Cole, T. A. Hendricks, O. B. Hord,* and *A. W. Hendricks,* for appellees.

* Petition for a rehearing overruled.