COMMONWEALTH *vs.* PHILIP ALTENHAUS.
SAME *vs.* SAME.

Bristol.    October 25, 1944. — November 29, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Innholder.    Evidence,* Presumptions and burden of proof.    *Words,* "Knowingly."

A finding that one in charge of a hotel was guilty of violation of G. L. (Ter. Ed.) c. 140, §§ 26, 29, by "knowingly" allowing it to be used for certain immoral purposes and by "knowingly" permitting guests to register under false names was not warranted by evidence which, although showing that on several occasions rooms in the hotel were used for immoral purposes and guests registered under false names, was, on the issue of the defendant's knowledge of the immoral purposes of such use and of the falsity of the registrations, as consistent with his innocence as with his guilt.

TWO COMPLAINTS, received and sworn to in the First District Court of Bristol on August 7, 1943.

On appeal to the Superior Court, the cases were tried before *R. M. Walsh*, J., a District Court judge sitting under statutory authority.

In this court the cases were submitted on briefs.

*V. J. Deponte*, for the defendant.

*B. Horvitz*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.    The defendant, a hotel proprietor, was found guilty by a jury on two complaints.    In one he was charged with having knowingly permitted, as a licensed innholder, the premises under his control to be used for immoral conduct, in violation of G. L. (Ter. Ed.) c. 140, § 26.    The other complaint alleged that while in charge of a hotel register he knowingly permitted "to be written in said register another or different name . . . than the true name or name in ordinary use of the persons registering," in violation of G. L. (Ter. Ed.) c. 140, § 29.

At the close of the evidence the defendant moved for a

directed verdict on each complaint and excepted to the judge's denial of the motion. Exceptions were also saved to the denial of a motion to quash the complaints, and to the denial of a motion for a new trial.

The motion for directed verdicts raises the question whether there was sufficient evidence of the defendant's guilt to warrant the submission of the cases to a jury. The statutes involved are G. L. (Ter. Ed.) c. 140, §§ 26, 29, the pertinent portions of which are as follows: "Section 26. Whoever, being licensed . . . as an innholder, or being in actual charge, management or control of the premises for which the license is issued, knowingly permits the premises under his control to be used for the purpose of immoral solicitation . . . bargaining or . . . conduct shall be punished . . . . Evidence that a room in a hotel . . . was not actually used for immoral conduct shall not prevent a conviction under this section of a person in actual charge, control or management of the premises who permits the occupation of such a room knowing or having good reason to know that the parties occupying such a room intended to use it for immoral solicitation . . . bargaining or . . . conduct." "Section 29. No person . . . in charge of a register [shall] knowingly permit to be written, in any register in any . . . hotel any other or different name or designation than the true name or name in ordinary use of the person registering or causing himself to be registered therein. . . ."

The following is a summary of the pertinent evidence. The defendant and his brother as partners own and operate a hotel of twenty-six rooms in the city of Taunton. Sometimes the defendant works at the desk where guests are registered and at other times his brother performs this duty. On July 8, 1943, at about 10 P.M. a police officer observed two girls at the window of a room on the second floor of the defendant's hotel. One of the girls was whistling to attract the attention of some soldiers who were passing. There was no evidence tending to show that the defendant had knowledge of this. Later that evening the officer observed some soldiers in the room, one of whom was

"kissing and hugging" one of the girls. On the following night, July 9, at midnight the officer (accompanied by his captain) called at the hotel and told the defendant what he had observed. The defendant and the two officers then proceeded to the room, which was occupied by two women. Upon questioning by the police officers, the women admitted that since registering on July 8 they had engaged another room and that each had entertained a soldier in her room the night before. Both denied having participated in any immoral conduct although their explanation was such that it might well have been disbelieved. They accompanied the officers to the police station where, after further questioning, they were placed under arrest. It does not appear that the soldiers had registered or that the defendant knew of their presence in the rooms.

Five days later on July 14 around 2 A.M. a sailor and a girl (each without baggage) were seen by a police officer to enter the hotel. Later, after ascertaining that the couple had registered as "Mr. and Mrs. Ray Conway, U. S. N." and had been assigned to a room, the officer, together with his captain, entered the hotel with a search warrant and, accompanied by the defendant, went to the room. After some delay they were admitted, and discovered that the occupants were not husband and wife and had registered under fictitious names. Both were arrested and charged with being lewd and lascivious persons.

On July 24 an officer observed a soldier and a woman enter the hotel around 1:30 A.M., and later learned that they had engaged a room and had registered as "Private William Petiauage and wife, Camp Myles Standish, serial number 3748123." On the following day, July 25, a police officer accompanied by the defendant went to the room and found it occupied by a woman who admitted that she had occupied it the night before with a soldier (whose full name she did not know) from Camp Myles Standish, who was not her husband.

In the early morning of August 4 two sailors entered the hotel with two women and each couple registered as husband and wife and were assigned to rooms for the night.

It later developed from investigation by the police that neither couple were husband and wife and all had registered under fictitious names. One of the men stated that at the time he registered he was "pretty drunk."

The defendant took the stand and admitted that he was present or in charge when the various persons on the occasions in question registered. He further testified, in substance, that he had no reason to believe that any of the couples were not married or were engaging the rooms for improper purposes.

The evidence clearly warranted findings that the rooms of the defendant's hotel were used for immoral conduct and that guests on several occasions registered under false names. But more than this must be proved in order to convict the defendant. Under both statutes there must be evidence that the defendant "knowingly" permitted these things to be done. There are, to be sure, many instances in the law where the Legislature has made the mere doing of an act an offence without proof of scienter. Many illustrations of this type of offence are collected in *Commonwealth* v. *Mixer*, 207 Mass. 141, 142, 143. But the offences under consideration do not belong to that class. "Knowingly" when used in a criminal statute "commonly imports a perception of the facts requisite to make up the crime." *Commonwealth* v. *Horsfall*, 213 Mass. 232, 237. *Commonwealth* v. *McKnight*, 283 Mass. 35, 39, 40.

When, as here, knowledge is an essential element of an offence, it may be, and generally is, proved by circumstantial evidence; and it may be inferred from a great variety of circumstances. No useful purpose would be served in analyzing in detail the evidence in the present cases. Probably in no two cases under these statutes would the evidence ever be the same, and to a large extent each case must be decided on its peculiar facts. We are of the opinion that the evidence in the cases at bar, on the decisive issue of knowledge, is as consistent with the defendant's innocence as with his guilt. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate

proof." *Commonwealth* v. *Carter*, 306 Mass. 141, 147. *Commonwealth* v. *O'Brien*, 305 Mass. 393, 399–401, and cases cited.

The refusal to order a verdict of not guilty on each complaint was error. In view of this conclusion it is unnecessary to consider the defendant's other exceptions.

*Exceptions sustained.*