STATE *vs.* HARRY MAIN *et al.*

MAY 8, 1962.

PRESENT: Condon, C. J., Roberts, Paolino and Frost, JJ.

ROBERTS, J. This is an indictment charging the defendants with having conspired to bring about a false, fraudulent, and fictitious return of the votes cast at a primary election. After trial to a jury in the superior court each of the defendants was found guilty. The case is in this court on the defendants' exceptions to the denial by the trial justice of their motion for a directed verdict and to certain evidentiary rulings made by him.

The indictment charges that on September 17, 1956 a primary election was conducted on behalf of the Republican party at Goff Junior High School in the city of Pawtucket for the nomination of candidates of that party for public

office and for the election of certain political committees. It is not disputed that defendant Melvin Main served as the warden at this election, that defendant Charles Fogarty served as a supervisor thereat, or that defendant Harry Main at that time was treasurer of the Republican city committee of Pawtucket. It appears that at that election the voters were to register their votes by the use of voting machines and that five such devices were in the room at the Goff Junior High School used for the election.

The evidence relating to illegal voting at this primary is in conflict. The state produced several witnesses to testify in this regard, and among them were others than defendants who had functioned as officials at the primary. The evidence adduced through these witnesses was, in substance, that sometime after eight o'clock on the morning of September 17 defendant Harry Main entered the room and greeted several of the persons present, including the officials conducting the primary. The defendant Harry Main then made some statement, the substance of which was "to the machines," and went to one of the voting machines and proceeded to operate the levers thereof some eight or ten times. At that same time others among those present, including defendants Melvin Main and Fogarty, went to other voting machines and operated the levers thereof repeatedly.

Evidence was also adduced through the state's witnesses that defendants Melvin Main and Fogarty and other of the primary officials proceeded to check the names of persons who had not appeared thereat to vote on the voting lists supplied for use at the primary. This action continued until they had checked a number of names on those lists which corresponded to the total vote registered on the voting machines. Some of these witnesses testified that the voting at the school during the primary election was light and that the number of persons who actually appeared to vote thereat was substantially less than the number of votes registered on the machines. Also introduced into evidence by the

state were a number of affidavits in which persons whose names were checked on the voting lists as having voted at the primary denied having participated in the election.

Each of the defendants, testifying in his own behalf, denied specifically that he had voted more than once at the primary or that to his knowledge any other person had repeatedly operated the levers of the voting machines thereat. Each denied that defendant Harry Main had made any remark in the nature of a direction or a suggestion that they go to the voting machines as was testified to by the state's witnesses. They denied also that they had checked on the lists as voting the names of persons who had not appeared to vote and that to their knowledge no other person in the polling place did so. All testified that throughout the day no complaints were made concerning irregularities in the conduct of the primary and that at the close thereof no question was raised as to the accuracy of the return then being prepared.

One of the contentions of defendants is that error inhered in the denial by the trial justice of their motion for a directed verdict of acquittal. The record discloses that at the close of the trial defendants did move for such a direction. setting out three grounds in support thereof. After hearing argument thereon the trial justice rejected each of the grounds and denied the motion.

In support of the motion to direct, defendants first urge that there is no evidence in the record that would warrant the jury in finding that in fact a conspiracy existed. The only evidence adduced in the instant case, they urge, is evidence which tends to establish certain misconduct on their part while in the school on the day of the primary. According to their contention, there is nothing in the record from which the jury could find that any of the defendants had met and discussed "anything about the primary prior to the date it was held * * *." The defendants obviously are contending that the existence of a conspiracy can be

proved only where there is evidence of some prearrangement, that is, of some planning of overt acts at a time prior to the commission thereof. This is a misconception of the law. Evidence of such a prearranged plan or of prior planning is not essential to prove a conspiracy. *Breedlove* v. *State*, 84 Ga. App. 370. It is well settled that a conspiracy may be established on the basis of evidence showing that the alleged conspirators acted in concert. *State* v. *Edwards*, 89 R. I. 378, 153 A.2d 153; *Commonwealth* v. *David*, 335 Mass. 686.

The defendants also urge in support of their motion for a direction that there is no evidence in the record from which a jury could find that the primary election which is the subject matter thereof was the primary election of a political party as set out in the indictment. The defendants were charged with conspiring to make a false return of the votes cast at a political party primary, the specific charge being that the primary was held by "a political organization within Rhode Island, which said party and political organization, at the preceding General Election on the first Tuesday after the first Monday of November in the year of our Lord one thousand nine hundred and fifty-four, nominated a candidate for Governor, which candidate at said election polled at least five per cent of the entire vote cast for Governor in Rhode Island * * *."

The statute that provided for and governed the conduct of primary elections in 1956 was P. L. 1948, chap. 2100. A political party within the purview of that statute was defined therein as a political organization that at the general election next preceding the holding of a proposed primary election had nominated a candidate for governor who at that election had polled at least 5 per cent of the vote cast for that office. In the instant indictment, however, no reference is made to that statute, either in whole or in part. It is clear from the form in which the indictment was drawn that the state was proceeding on the theory that the mak-

ing of a false or fraudulent return of the vote cast at a primary election held by a political organization of the kind described in the indictment would be an unlawful act and that a conspiracy to accomplish the making of such false return would be criminal. The defendants do not challenge the validity of that view.

It appears from the record that when, on their motion to direct, defendants questioned whether the record contained any evidence from which could be established the kind of political party for which the primary had been conducted, the trial justice considered first a reopening of the case to permit the state to introduce relevant evidence on this issue. This he did not do but, asserting that the kind of political party involved here was a matter of which the court could take judicial notice, he took judicial notice thereof and rejected this ground for the motion. In arguing before this court on the question, the state maintained the position of the trial justice that the holding of primary elections by political parties is a matter of which courts could properly take judicial notice and that therefore no error inhered in rejecting this as a reason for the direction of a verdict of acquittal. This argument, in our opinion, does not reach the precise issue before us.

The posture in which this case has been presented to this court is fixed by two circumstances of substantial significance. First, the state does not dispute the contention of defendants that there is in the record no evidence on which the jury would have been warranted in finding that the primary was held on behalf of a political party of the kind set out in the indictment. Second, the state does not contend that those allegations of the indictment concerning the kind of party for which the primary was conducted are unnecessary or should be disregarded as surplusage.

In the circumstances the issue raised is whether a trial court, in passing on a motion for a directed verdict in a criminal case, may properly determine that motion on the

basis of facts, the existence of which is ascertained by the court's taking judicial notice thereof. On such an issue, in our opinion, argument as to the power of the trial court to take judicial notice of matters which are notorious or of common knowledge is not in point. In other words, the precise issue raised here does not require an inquiry into the scope of the authority of a trial court to take judicial notice of the particular facts, but rather the issue is whether a trial court, in determining a motion to direct, properly may resort to judicial notice to establish the existence of material facts that could not be found by a jury on the evidence contained in the record.

A motion for a direction of a verdict of acquittal in criminal cases raises a question as to the sufficiency of the evidence to warrant the submission of the case to the jury. *Commonwealth* v. *Altenhaus,* 317 Mass. 270. In *State* v. *Biter,* 49 Del. 503, at page 509, the purpose of the motion is stated succinctly as: "It denies the sufficiency of the evidence and challenges the State's right to go to the jury." The motion obviously gives a defendant an opportunity to require the trial justice to review the evidence adduced during trial and in the light of his superior knowledge and experience to determine therefrom whether the state of the evidence is such as warrants a submission of the case to the jury.

In passing upon this motion, however, the trial justice in his evaluation of the evidence must conform to certain well-established standards consistent with the scope of the fact-finding power of the jury. A jury in an exercise of its fact-finding power has a broad authority to determine credibility and the weight to be given to evidence as well as to draw therefrom all reasonable inferences. Because of the latitude of the power thus vested in the jury, the trial justice on this motion is required to give full credibility and weight to the evidence adduced on the issue of guilt and to draw therefrom any reasonable inferences favorable to

the state. *State* v. *Montella*, 88 R. I. 469. When on any reasonable view of the evidence it appears that a jury properly could find the defendant guilty, the motion should be denied.

When, however, a trial justice, in passing upon such a motion pursuant to the limitations prescribed, finds that the evidence is so defective that a verdict returned thereon could not be sustained, or so uncertain as to leave the question of guilt to conjecture, it is his duty to direct a verdict of acquittal. *State* v. *Doak*, 156 Me. 8; *State* v. *Sanford*, 118 Vt. 242. It is equally true that a defendant is entitled to the direction of a verdict of acquittal where there is an absence of evidence probative of his guilt. With respect to cases involving the latter circumstances it has been said that "where there is an absence of evidence of guilt, it becomes his duty *as a matter of law* to direct an acquittal." *State* v. *Lamoreaux*, 20 N. J. Super. 65, 72. The fundamental nature of the obligation of a trial court to direct a verdict of acquittal in an appropriate case was recognized in *Commonwealth* v. *Jodlowsky*, 163 Pa. Super. 284, wherein that court said at page 288: "In the interests of the liberty of the citizens a court may and, in a proper case, should declare the evidence insufficient to convict."

The right of an accused to a directed verdict of acquittal in an appropriate case appears to be well settled. The motion itself is an integral part of our jury trial procedure and results from long experience in the development of that procedure as an effective instrument for the doing of substantial justice. Like the motion for a new trial after verdict it makes available to an accused a device through which he may secure himself against the conclusiveness of a jury's exercise of its fact-finding power where such is contrary to the evidence or the weight thereof. These trial mechanisms have a definite purpose, the first to prevent and the second to negative erroneous findings of fact by a jury.

It is our opinion that the whole purpose of the motion

for a direction would be defeated if a trial justice were permitted to supply by an exercise of his power to take judicial notice facts essential to the guilt of an accused where those facts are not susceptible of proof on the evidence adduced. It appears to us that if the trial court may not, in passing on this motion, derogate from the weight of the evidence probative of the guilt of the accused, it certainly should be precluded from supplementing the evidence of the guilt of the accused by taking judicial notice of facts essential to the proof thereof but that, in the state of the evidence, could not be found by the jury.

No case has been drawn to our attention in which this court passed upon the precise question raised here. We are not aware that it has ever been the practice in this state for the trial court in a criminal case to instruct the jury that it had taken judicial notice of facts essential to the proof of the offense charged and that such a finding of fact by the court would be conclusive thereof. In *State* v. *Luther*, 20 R. I. 472, on a defendant's motion to quash a complaint charging him with the possession of adulterated milk in violation of a statute, this court refused to take judicial notice of a method for testing the fat content of milk, ruling that the defendant could not raise the question on a motion to quash.

We are of the opinion that a trial court may not properly supply essential evidence in a criminal case through an exercise of its power to take judicial notice of matters that are of common knowledge. We are strengthened in this conclusion by the reasoning of the supreme court of Utah in *State* v. *Lawrence*, 120 Utah 323. The indictment in that case charged the defendant with grand larceny involving the theft of an automobile. Under the pertinent statute the offense of grand larceny required that the property stolen be valued in excess of $50. At the trial no evidence was adduced as to the value of the stolen car, and at the close thereof the defendant moved for a directed verdict of

acquittal. The trial justice thereupon took judicial notice that the value of the stolen car was in excess of $50, denied the defendant's motion for a directed verdict, and instructed the jury that they were bound by his finding as to the value of the car.

The defendant excepted to the charge that was thus given to the jury, and the court held that error inhered therein. In other words, the Utah court found that it was error for a trial justice, in an exercise of his power to take judicial notice, to bind the jury as to the existence of an essential element of the crime. The court said at page 330: "If a a court can take one important element of an offense from the jury and determine the facts for them because such facts seems [sic] plain enough to him, then which element cannot be similarly taken away, and where would the process stop?"

These same considerations are relevant, in our opinion, to cases in which a trial court, in an exercise of its judicial notice, supplies an essential fact when called upon to determine a motion for a directed verdict of acquittal. It is clear that in so doing he submits the case to the jury wherein the state of the evidence is such that the jury could not properly find the defendant guilty. The effect of such procedure would be to strike down the motion to direct a verdict of acquittal, which motion, as we have already noted, is, in our opinion, an integral part of the jury trial procedure.

It may well be that the missing evidence in the instant case relates to a fact which, if unproved, would not detract from the seriousness of the offense with which these defendants are charged. The indictment, however, sets out this fact as an essential element of the offense charged therein, and if on a failure to adduce evidence probative thereof the trial court, in an exercise of judicial notice, may supply such evidence, these defendants would be deprived of a well-

recognized right, that is, to challenge the sufficiency of the evidence by a motion to direct a verdict of acquittal.

It is our opinion that error inhered in the action of the trial justice in denying the defendants' motion for a directed verdict of acquittal. Because we take this view, it will be unnecessary for us to consider the remaining exceptions of the defendants.

The defendants' exception numbered 88 is sustained, and the case is remitted to the superior court for entry of a judgment for each defendant of not guilty.

CONDON, C. J., dissenting. The primary in question was conducted by the Republican party subject to the supervision of and with voting machines supplied by the state board of elections. The election law provided that a primary may be held only by a political party which polled not less than 5 per cent of the total vote for governor at the election next preceding the primary. G. L. 1956, §17-12-1. The records of the board contain the official statistics of such election. They incontrovertibly show whether the Republican party polled the required number of votes to entitle it to hold the primary here in question. It must be assumed that the board would not have authorized the primary and supplied the voting machines unless its records showed that the Republican party was so entitled.

There is a presumption that sworn officers perform their duty according to law. *Greenough ex rel. Carroll* v. *Board of Canvassers and Registration*, 33 R. I. 559; *Pendleton* v. *Briggs*, 37 R. I. 352. In the absence of evidence tending to rebut such presumption it was not necessary to present evidence that the primary was lawful. *Nugent ex rel. Cote v. Mullen*, 92 R. I. 69, 166 A.2d 409. This is a presumption of law to which the state was entitled. Such presumptions are constitutional in criminal as well as civil cases. *State* v. *Sheehan*, 28 R. I. 160; *Yee Hem* v. *United States*, 268 U. S. 178. So long as the presumption is rebuttable the defendant suffers no harm. The presumption does not im-

pose on him the burden of proof but merely shifts the burden of going forward with evidence to overcome the presumption. Thereafter the burden of proof remains with the state and the presumption ceases. In the absence of such rebutting evidence the trial justice rightly assumed the legality of the primary and therefore did not err in denying defendants' motion for a directed verdict in so far as it was grounded on the state's failure to present formal evidence of such legality. For this reason I am constrained to dissent.

It seems to me that there is still another compelling reason for sustaining the trial justice's position in this matter. Facts of common knowledge need not be formally proved since all men are presumed to know them. Such knowledge may and should be used by both judge and jury. In this connection it has been well said that " 'Courts will not pretend to be more ignorant than the rest of mankind.' " *Fisher* v. *Jansen*, 30 Ill. App. 91, 92. What any particular judge or jury may know is not the test. Neither may ever have heard of the fact which is claimed to be commonly known yet each may be required to assume that it is true without formal evidence. *Commonwealth* v. *Peckham*, 2 Gray (Mass.) 514; *Commonwealth* v. *Pear*, 183 Mass. 242; *King* v. *Gallun*, 109 U. S. 99. The only problem is whether the fact in question is properly one of common knowledge.

In the case at bar the question whether the Republican party is a legal party entitled to hold a primary is one involving the political history of the state and the official election statistics. It has been generally held that the courts will recognize as matters of common knowledge the recent political history of the state and of the great national parties as well as the results of elections in which they were involved. *State ex rel. Buttz* v. *Liudahl*, 11 N. D. 320; *Brooke* v. *Filer*, 35 Ind. 402; *State ex rel. Howells* v. *Metcalf*, 67 L.R.A. 331; *In re Denny*, 156 Ind. 104; *State ex rel.*

*Marr* v. *Stearns,* 72 Minn. 200; *Prince* v. *Crocker,* 166 Mass. 347; *State ex rel. Harvey* v. *Wright,* 251 Mo. 325.

It is certainly a matter of common knowledge that the Republican party is one of the two great political parties and that in this state it has consistently polled in recent elections, and especially the one next preceding the primary here in question, more than 5 per cent of the total vote for governor. For the court or jury to refuse to recognize such facts would be to confess ignorance of what everyone else knows. The trial justice correctly assumed that they were matters of common knowledge and took judicial notice of them. What he did, the jury were also entitled to do and hence he did not err in denying defendants' motion for a directed verdict.

For these defendants to escape the jury's verdict solely on the ground relied upon by the court will be, in my opinion, regrettable from the viewpoint of public justice. While I join in the court's laudable desire to see that defendants are accorded the full measure of their undoubted right to a full, fair and impartial trial I cannot subscribe to the view that such right has in any degree been denied in this instance. It is true that the chief glory of the common law is its extreme solicitude for the enforcement of all the rights of the accused in a criminal trial, but it is equally true that such solicitude must be reasonable and recognize the realities of life. In my opinion the court's decision falls short of such recognition, hence for this reason also I dissent.

### On Motion for Reargument.

MAY 25, 1962.

**Per Curiam.** After our opinion in the above case was filed the state was granted permission to present a motion for reargument. Pursuant thereto such a motion has been filed setting out therein the particular reasons on which it

bases its contention that justice requires a reargument of the case.

The majority of the court, having given full consideration to the reasons urged in support of the motion, is of the opinion that no reason has been shown for the granting of the motion for reargument.

Motion denied.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for State.

*Ralph Rotondo, Michael Addeo,* for defendants.