Commonwealth v. Cahill.

COMMONWEALTH *vs.* JOSEPH CAHILL.

Middlesex. March 10, 2006. - May 19, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & CORDY, JJ.

*Idle and Disorderly Person. Words,* "Offensive," "Disorderly."

At the trial of a criminal complaint charging the defendant with accosting or
annoying a person of the opposite sex, in violation of G. L. c. 272, § 53,
the evidence was sufficient to permit the fact finder to infer that the
defendant's behavior was offensive, where the defendant's act of grabbing
the victim from behind "really tight" around her shoulders, at their mutual
place of business while she was attending to customers, made her feel
panicky and frightened and caused her to have trouble concentrating at
work [780-781]; moreover, the evidence was sufficient to permit the fact
finder to infer that the defendant's behavior was disorderly within the
meaning of the statute, where the defendant's actions created a physically
offensive condition for no legitimate purpose [781-783, 783-784]; further,
the evidence was sufficient to permit the fact finder to infer that a reason-
able person would have found the defendant's behavior offensive and
disorderly [783].

COMPLAINT received and sworn to in the Natick Division of
the District Court Department on May 22, 2003.

The case was heard by *Robert V. Greco,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Melissa J. Garand* for the defendant.

*Miriam S. Pappas,* Assistant District Attorney (*Loretta M.
Lillios,* Assistant District Attorney, with her) for the
Commonwealth.

IRELAND, J. The defendant was charged with accosting or an-
noying a person of the opposite sex, G. L. c. 272, § 53; harass-
ment, G. L. c. 265, § 43A; and assault and battery, G. L. c. 265,
§ 13A, of the victim, a fellow cashier at a supermarket. After a
jury-waived trial in December, 2003, a District Court judge al-
lowed the defendant's oral motion for a required finding of not
guilty of harassment. The judge found the defendant not guilty

of assault and battery but guilty of accosting or annoying a person of the opposite sex, and sentenced him to one year of probation. The defendant appealed and the Appeals Court reversed his conviction. *Commonwealth* v. *Cahill*, 64 Mass. App. Ct. 911 (2005). We granted the Commonwealth's application for further appellate review. Because we conclude that the defendant's conduct was offensive and disorderly within the meaning of the statute, we affirm the defendant's conviction.

*Facts.* We recite the facts in the light most favorable to the Commonwealth, reserving certain details for our discussion of the issues raised. The victim was hired as a new cashier in February, 2003. The defendant also worked as a cashier at the store and conducted the victim's training session. One of the defendant's duties was to evaluate the victim's job performance. Between February and April, 2003, the defendant "forced his unwanted attentions on [the victim] . . . asking her out for dates [over twenty times]; sometimes approaching her cashier station too closely, so that his body would 'graze' hers; occasionally touching her back; [and] often staring down at her station from a balcony above the checkout counters." *Id.* at 911. Much of the victim's testimony was corroborated by two former coworkers who were called by the Commonwealth to testify at trial.[1]

The victim testified that in March, the defendant left a telephone message and his telephone number with a supervisor, asking the victim to telephone him. She told the supervisor that she did not want the defendant to telephone her. The next day the defendant approached the victim in an angry and confrontational manner, came close to her face, and asked her why she did not contact him. The victim felt panicky and afraid for her safety outside the workplace. In April, while the victim was assisting customers at her cashier's station, the defendant came up behind her and "grabbed [her] around the neck really tight with both arms around [her] shoulders and neck . . . more around [her] shoulders" and said, "I love you." The victim felt panicky

---

[1] The two former coworkers testified that the defendant touched the victim on the back; asked her to dinner, which she refused; and stared at the victim. Both testified that the victim was upset or made nervous by the defendant's behavior.

and frightened and told the defendant to let her go. The defendant did so after ten to fifteen seconds. He left the victim's station but stayed nearby, still pleading with her to go out with him and to have dinner with him. After this incident, which was the basis for the complaint against the defendant, the victim was frightened, had trouble concentrating at work, and had to take medication.[2] One or two days after the incident, the defendant came up to the conveyor belt at the register where the victim was working, banged on it, and asked a female customer why the victim had not called him, frightening the customer. The victim reported the incidents to the store manager, who suspended the defendant.

The defendant testified that the victim told him that her husband left her and she was looking for a paralegal job. He concluded that she was depressed and needed a friend. He stated that he offered to help her find a paralegal job. He claimed that while he did ask the victim to go out with him, it was only as friends and, although she declined, she never told him no. He stated that he was old enough to be her father and was not interested in her romantically. He denied staring at her. He stated that he did not own a telephone and that the number he left for the victim was a person to contact so she could find another job. He denied working on the day the victim claimed he put his arms around her and told her he loved her. He said he only put his arms around her shoulders once, to comfort her as a friend, but it happened when there were no customers around.

*Discussion.* The defendant argues that the judge erred in denying his motion for a required finding of not guilty. In reviewing a denial of a motion for a required finding of not guilty, "we must consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the [fact finder] to infer the existence of the essential elements of the crime charged . . . ." *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), quoting *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975).

---

[2]The victim testified that she had been prescribed this medication before this incident happened.

General Laws c. 272, § 53, states in relevant part: "[P]ersons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex . . . may be punished." Under this statute, the Commonwealth has to prove that the defendant's behavior was offensive and disorderly to a reasonable person. *Commonwealth* v. *Chou*, 433 Mass. 229, 235 (2001). We consider each in turn.

1. *Offensive acts.* The defendant argues that his behavior was not offensive, especially because the two former coworkers who testified (see note 1, *supra*) did not refer to the defendant's behavior as harassing.[3] We disagree. Offensive acts are those that cause "displeasure, anger or resentment; esp., repugnant to the prevailing sense of what is decent or moral." Black's Law Dictionary 1113 (8th ed. 2004). See *Commonwealth* v. *Whiting*, 58 Mass. App. Ct. 918, 920 (2003). The defendant's act of grabbing the victim from behind "really tight" around her shoulders, while she was attending to customers, was offensive, particularly when considered in the context of the defendant's other behaviors toward the victim in the workplace. The victim testified that the defendant accosted her when he grabbed her from behind, and she stated that this action made her feel panicky and frightened and caused her to have trouble concentrating at work. Moreover, the defendant's claim that the testimony of the other two coworkers supports the conclusion that the defendant's behavior was not offensive misses the mark. It was clear from their testimony that the defendant subjected the victim to far more unwanted attention than that experienced by coworkers.[4]

2. *Disorderly acts.* Disorderly acts are behaviors that "create

---

[3]The defendant also takes the victim's testimony out of context to argue that because she previously had filed a harassment complaint, she was more sensitive to harassment. The victim actually said that since the earlier incident, "I'm more aware of it and I'm more willing to report it right away, instead of letting it go."

[4]One coworker was not asked whether the defendant touched her. She testified that the defendant called her "sweetheart" and that the defendant's behavior toward another coworker made her uncomfortable. However, the other coworker testified that the defendant rubbed her back once and that it made her feel "[k]ind of awkward. I'm only seventeen. He was older, it was weird." She stated that she thought the defendant was being too friendly, but when asked whether she similarly characterized the defendant's behavior

a . . . physically offensive condition for no legitimate purpose of the actor, whether the resulting harm is suffered in public by the public or in private by an individual." *Commonwealth* v. *Chou, supra* at 233.

The defendant argues that the Commonwealth did not prove that his behavior was disorderly because his behavior was not the extreme invasion of personal privacy at issue in other cases.[5] *Commonwealth* v. *Cahill,* 64 Mass. App. Ct. 911, 912 (2005), citing *Commonwealth* v. *LePore,* 40 Mass. App. Ct. 543, 548-549 (1996) (voyeurism violative of statute because it invades privacy where people "are most entitled to feel secure"). The defendant further argues that while his action was "possibly inappropriate in the workplace," the behavior is not the kind of behavior the statute was meant to cover. We conclude that the defendant's behavior was disorderly within the meaning of the statute.

In *Commonwealth* v. *LePore, supra,* the victim was sleeping and therefore was *unaware* that the defendant had opened her bedroom window and screen and was standing there. *Id.* at 545. Obviously, there was no physical contact between the victim and the defendant. Nevertheless, the court held that the behavior was physically offensive. *Id.* at 548-549. Here, the defendant physically grabbed the victim from behind "really tight," which had sexual overtones in light of his words, "I love you," and his previous and subsequent behavior, thus invading her personal privacy[6] at the workplace while she was trying to attend to customers. This was physically offensive. Cf. *Commonwealth* v.

toward the victim as friendly, she stated, "I don't really think so. I mean in her case it was different, he asked her out on dates . . . ."

[5]Because on a grant of further appellate review, this court reviews the trial record and not the decision of the Appeals Court, we need not address every argument the defendant makes in reliance on the reasoning of the Appeals Court in this case. For example, the defendant relies on the Appeals Court's assertion that other statutes covered the defendant's behavior. *Commonwealth* v. *Cahill,* 64 Mass. App. Ct. 911, 912 (2005). Here we are concerned only with whether there was evidence sufficient for a fact finder to infer the existence of the essential elements of G. L. c. 272, § 53. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979).

[6]We find no merit in the defendant's argument that the victim's personal privacy was not implicated, because the defendant's action took place in a public place. General Laws c. 272, § 53, contains no requirement that the offensive acts be conducted in private. Furthermore, in *Commonwealth* v. *Chou,*

*Chou, supra* at 235 (defendant's distribution of sexually deroga-tory flyers concerning victim not physically offensive; however, act was threatening under statute). Because we conclude that the defendant's act was physically offensive, we need not consider whether it also was threatening.[7]

3. *Reasonable person.* The defendant also argues that because the victim was involved in a previous sexual harassment case, and because her coworkers' views of the defendant's behavior were different from hers, she is not a reasonable person under the statute. *Commonwealth v. Chou, supra.* We have discussed these arguments and need not reiterate them here. We conclude that a reasonable person would have found the defendant's behavior offensive and disorderly.

4. *Overreaching.* Relying on *Commonwealth v. Chou, supra,* and *Commonwealth v. LePore, supra,* the defendant argues that the statute requires a higher level of threatening or "physically offensive" behavior than he exhibited here.[8] We also need not belabor this argument. As we discussed, the *Chou* case dealt

---

433 Mass. 229, 233 (2001), we stated that "the crime of accosting or annoy-ing a person of the opposite sex evinces a legislative intent to criminalize of-fensive and disorderly conduct or language that has a personal and private, rather than a necessarily public, impact." Here, after the incident in which the defendant grabbed the victim, she was frightened, had trouble concentrating at work, and had to take medication. We hold that the impact here of the defendant's offensive act was certainly "private."

[7] In his brief, the defendant also argues that the Commonwealth failed to prove that the defendant lacked a legitimate purpose for his actions under the statute. He argues that his behavior toward the victim was due to his concern for the victim and because he was the performance evaluator and his job required him to be near all cashiers. However, at oral argument, counsel for the defendant conceded that there was no legitimate purpose for the defendant's behavior. In any event, viewing the evidence in the light most favorable to the Commonwealth, there could be no legitimate purpose for the defendant's act. The defendant grabbed the victim from behind while she was helping customers and told her that he loved her, then lingered near the victim and asked her out to dinner after she told him to let her go. Such behavior has nothing to do with the defendant's job as a performance evaluator or having to be near cashiers on occasion. Cf. *Commonwealth v. Feigenbaum,* 404 Mass. 471 (1989) (conviction reversed where Commonwealth failed to prove defendant's actions served no legitimate purpose); *Commonwealth v. Zettel,* 46 Mass. App. Ct. 471 (1999) (same).

[8] The defendant further argues that G. L. c. 272, § 53, has a "controversial history" and is "archaic." The statute's history and the definition of "disorderly" at issue in this case were addressed in *Commonwealth v. Chou,*

with threatening behavior under the statute, and the *LePore* case extended "physically offensive" to mean behavior of which the victim was unaware. Particularly in light of these two cases, we conclude that the defendant's action fits into the spectrum of offensive behavior contemplated by the statute.

*Conclusion.* For the reasons set forth above, we conclude that the evidence was sufficient for the judge to infer the existence of the essential elements of G. L. c. 272, § 53.

*Judgment affirmed.*

433 Mass. 229 (2001), and *Commonwealth* v. *Sholley*, 432 Mass. 721 (2000). In the *Sholley* case, we concluded that the definition of "disorderly" conduct is found in "subsections (a) and (c) of § 250.2 of the Model Penal Code, with any application of subsection (c) restricted to cases not involving protest or other expressive activities (as required by the *Feigenbaum* decision)." *Id.* at 728. The *Sholley* decision narrowed the definition of "disorderly" conduct so that it now conforms to the Model Penal Code, thus eliminating any impact of the statute's history. *Id.* at 727.