COMMONWEALTH *vs.* DANIEL MORAN.

No. 10-P-231.

Norfolk. October 13, 2010. - August 4, 2011.

Present: McHugh, Rubin, & Hanlon, JJ.

*Idle and Disorderly Person. Statute,* Construction. *Words,* "Offensive," "Disorderly."

At the trial of a criminal complaint charging the defendant with accosting or annoying a person of the opposite sex in violation of G. L. c. 272, § 53, the evidence was sufficient to prove beyond a reasonable doubt that the defendant's conduct was offensive and disorderly, in that it was repugnant to the prevailing sense of what is decent or moral [9-10]; further, there was no merit to the defendant's contention that the Legislature intended to restrict the statute's coverage to situations where a defendant engaged in more than one act [10-13].

COMPLAINT received and sworn to in the Brookline Division of the District Court Department on July 20, 2009.

The case was heard by *Patricia G. Curtin,* J.

*Kenneth I. Seiger* for the defendant.

*Pamela Alford,* Assistant District Attorney, for the Commonwealth.

McHugh, J. Following a trial without a jury in the District Court, the defendant, Daniel Moran, was convicted of accosting or annoying a person of the opposite sex in violation of G. L. c. 272, § 53. He appeals, claiming that the evidence was insufficient to support his conviction. We disagree and affirm.

The facts are not in dispute. On July 17, 2009, a young woman whom we shall call Ms. Jones[1] was employed as a nanny by a Brookline family. That morning, she was walking down Beacon Street in Brookline, pushing a sixteen month old child in a stroller on her way to a coffee shop and then to a nearby park.

---

[1] A pseudonym.

As she neared the coffee shop, two men, one of whom was the defendant, approached her from the opposite direction. As the defendant passed Jones within arm's reach, he said, "Hi, nanny," grabbed his camouflage trousers, and moved his "private area up and down" in a "[v]ery obvious" movement that "reflected masturbation."

Disturbed by the incident, Jones continued on to the coffee shop and then to the park. The encounter, though, was "nagging" her for the rest of the morning, so when she returned to the Brookline home, she described it to her employer. At the employer's suggestion, Jones called the police, who came to the house. Upon hearing her account of the incident, they undertook a search for the perpetrator. Aided by Jones's description of the camouflage pants the perpetrator had been wearing, the police soon found the defendant, whom Jones identified. Arrest, conviction, and this appeal soon followed.

On appeal, the defendant's contention that the evidence was insufficient to support his conviction has two prongs, both of which spring from the language of G. L. c. 272, § 53. In relevant part, that statute, as appearing in St. 2009, c. 27, § 98, provides that "persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex . . . [shall] be punished." The first prong of the defendant's argument is that his activity was neither offensive nor disorderly. The second prong rests on his assertion that the evidence only reveals a single act, but given the statutory prohibition of "acts" that accost or annoy, conviction requires proof of at least two. Neither contention is persuasive.

As to the first prong of the argument, the Commonwealth must prove beyond a reasonable doubt that the conduct at issue was "offensive and disorderly to a reasonable person." *Commonwealth v. Cahill*, 446 Mass. 778, 781 (2006). An "offensive" act is one that causes "displeasure, anger or resentment; esp. [one that is] repugnant to the prevailing sense of what is decent or moral." *Ibid.*, quoting from Black's Law Dictionary 1113 (8th ed. 2004). "Disorderly" acts include those that involve "threatening . . . behavior." *Commonwealth v. Chou*, 433 Mass. 229, 232 (2001). The threat need not involve physical contact, see *Commonwealth v. LePore*, 40 Mass. App. Ct. 543, 548-549 (1996) (voyeurism),

and "[s]exually explicit language, when directed at particular individuals in settings in which such communications are inappropriate and likely to cause severe distress, may be inherently threatening." *Commonwealth* v. *Chou, supra* at 234.

Given those well-established guidelines, the evidence was sufficient to prove beyond a reasonable doubt that the defendant's conduct was offensive and disorderly. Within reaching distance of Jones, the defendant drew attention to himself by saying, "Hi, nanny," while grabbing the genital area of his pants and moving his hand up and down, mimicking masturbation. Surely a fact finder could conclude that conduct of that sort is "repugnant to the prevailing sense of what is decent or moral." *Commonwealth* v. *Cahill, supra.* Moreover, the conduct fairly bristled with menace. A stranger's unbidden suggestion of sexual activity is inherently menacing, for it invades a very private zone. The defendant delivered his suggestion in person and at close quarters. He did so in the company of another man, also a stranger to Jones. And a fact finder would be entirely warranted in concluding that Jones's sense of vulnerability was enhanced by the presence of her young charge in the stroller she was pushing. There was, in sum, ample evidence to support a finding that the defendant had engaged in threatening behavior.[2]

The defendant's second argument is that the evidence shows only a single act, and conviction requires proof of "offensive and disorderly *acts* or language." He supports his contention not only by pointing to the statutory language but also by relying on the District Court's model jury instruction, which states that "the Commonwealth must prove beyond a reasonable doubt . . . that the defendant committed two or more disorderly acts." Instruction 6.600, Criminal Model Jury Instructions for Use in the District Court (Mass. Cont. Legal Educ. 2009).

We acknowledge the thoughtful statutory analysis typically underlying the model instructions, but in the end, we come at the interpretive process afresh. See, e.g., *Norfolk & Dedham*

---

[2]The defendant wisely makes no claim that, as applied to his behavior, the statute is unconstitutionally vague, see *Commonwealth* v. *Whiting*, 58 Mass. App. Ct. 918, 920 (2003), nor does he claim that the statute's application to his conduct violates his rights under the First Amendment to the United States Constitution, see *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 599 (1975).

*Mut. Fire Ins. Co.* v. *Morrison*, 456 Mass. 463, 467 (2010). In so doing, we start with the words of the statute, for they are the best indication of its meaning and purpose. See, e.g., *Adoption of Marlene*, 443 Mass. 494, 497-498 (2005). In construing those words, accepted canons of construction play an important role.

Many such canons are codified in G. L. c. 4, § 6, inserted by St. 1967, c. 867, § 1, a statute that requires their use unless to do so "would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute." Of most relevance here is G. L. c. 4, § 6, Fourth, as appearing in St. 1998, c. 170, the pertinent portion of which says that "[w]ords importing the singular number may extend and be applied to several persons or things, [and] words importing the plural number may include the singular." The statutory canon has been applied in civil and criminal contexts. See *Commonwealth* v. *Tsouprakakis*, 267 Mass. 496, 501 (1929); *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 49 (1975); *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 561-563 (2001). Applying that canon to G. L. c. 272, § 53, provides an ample basis for applying the statute to a single act.

Comparison of the manner in which the Legislature has handled a similar subject in other statutes also is instructive. See, e.g., *Lavecchia* v. *Massachusetts Bay Transp. Authy.*, 441 Mass. 240, 245-246 (2004). The word "acts" appears in several criminal statutes. See, e.g., G. L. c. 260, § 4C (sexual abuse of minors); G. L. c. 265, § 13L (wanton or reckless behavior creating risk of injury to a child); G. L. c. 265, § 22 (aggravated rape); G. L. c. 265, § 22B (aggravated rape of a child); G. L. c. 265, § 45 (community parole supervision for certain criminal offenses); G. L. c. 268A, § 2 (corrupt gifts); G. L. c. 272, § 26 (resorting to restaurants or taverns for immoral purposes). When the Legislature intended application of the word only in its plural form, however, it has used modifiers to drive the point home. See, e.g., G. L. c. 265, § 43, as appearing in St. 2010, c. 92, § 9 ("pattern of conduct or series of acts" required for crime of stalking); G. L. c. 265, § 43A, as appearing in St. 2010, c. 92, § 10 ("pattern of conduct or series of acts" required for crime of harassment); G. L. c. 266, § 62 (proof of "three or more distinct acts" required to prove crime of being common receiver

of stolen goods). See also *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 547-548 (1994) (construing criminal stalking statute); *Commonwealth* v. *Welch*, 444 Mass. 80, 89-90 (2005) (construing criminal harassment statute). The absence of modifiers in G. L. c. 272, § 53, therefore, suggests that the Legislature did not intend to restrict the statute's coverage to situations where a defendant engaged in more than one act.

To the extent doubt remains, we may look to "the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Above all, we must apply the statute in a manner that avoids absurd results. See *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000). In *Commonwealth* v. *Chou*, 433 Mass. at 233, the Supreme Judicial Court held that the statute's primary purpose was to "criminalize offensive and disorderly conduct or language that has a personal and private, rather than a necessarily public, impact." Limiting the statute's application to multiple acts of disorderly conduct bears no conceivable relation to that purpose. Moreover, such a limitation would lead to absurd results. The statute prohibits offensive "acts or language." Reading it to require proof of multiple acts would mean that one who by a single hand gesture clearly pantomimed an offensive suggestion would be immune from prosecution but a person who verbalized precisely the same suggestion could be prosecuted for doing so. We cannot assume that the Legislature intended any such result.

Finally, there is legislative history. As noted in the commentary to the District Court's model jury instruction, the word "acts" was inserted in G. L. c. 272, § 53, by an amendment adopted in 1983. See St. 1983, c. 66, § 1. Before the amendment, the singular form of the word had been in place for nearly seventy years following its first appearance in 1914. See St. 1914, c. 743. We do not think that the change was one of substance.

We reach that conclusion because, except for changing the word "act" to "acts," the 1983 amendment focused entirely on the subject of prostitution. It added to § 53 the status crime of being a "common street walker" and removed from the statute the word "prostitutes." In addition, a 1983 amendment added a new statute, i.e., G. L. c. 272, § 53A, criminalizing the act of

accepting or paying money for sexual conduct, or offering to do so.

Substitution of "acts" for "act" had nothing to do with prostitution. Instead, it focused on syntax. Before the amendment, the pertinent language read "persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex . . . ." St. 1959, c. 304, § 1. The phrase was awkward and would have flowed more naturally had it read "persons who with an offensive and disorderly act or offensive and disorderly language." We think that in 1983 the Legislature simply chose a more succinct way to achieve harmonious syntax by changing the word "act" to "acts" so that the phrase read, as it reads today, "persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex . . . ." So viewed, the change had no impact on the statute's meaning.

There was, then, sufficient evidence to support a finding that the defendant's conduct was offensive and disorderly. The statute applies to the commission of a single act.

*Judgment affirmed.*