NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11568


COMMONWEALTH  vs.  JOSEPH D. SULLIVAN.



Middlesex.    May 6, 2014. - September 9, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, &
Duffly, JJ.[1]


Attempt.  Kidnapping.  Idle and Disorderly Person.  Practice,
Criminal, Assistance of counsel.



Indictments found and returned in the Superior Court
Department on November 27, 2007.

The cases were tried before Hiller B. Zobel, J.; motions
for a new trial and to vacate a conviction, filed on November 2,
2010, were considered by Sandra L. Hamlin, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Kevin J. Curtin, Assistant District Attorney (Nicole L.
Allain, Assistant District Attorney, with him) for the
Commonwealth.
Dennis A. Shedd for the defendant.
Timothy St. Lawrence, for Massachusetts Association of
Criminal Defense Lawyers, amicus curiae, submitted a brief.


---

[1] Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

SPINA, J.  Following a jury trial in the Superior Court in December, 2008, the defendant, Joseph D. Sullivan, was convicted of attempted kidnapping, G. L. c. 274, § 6, and of accosting or annoying a person of the opposite sex, G. L. c. 272, § 53.[2]  He was sentenced to from three to five years in the State prison on his conviction of attempted kidnapping, and he was sentenced to three years' probation on his conviction of accosting or annoying a person of the opposite sex, to commence on and after the attempted kidnapping sentence.  On appeal, the defendant argued that (1) the Commonwealth failed to present sufficient evidence to prove every element of the charged crimes beyond a reasonable doubt;[3] (2) his motion to vacate the attempted kidnapping conviction was wrongly denied; and (3) his counsel provided ineffective assistance during the course of the trial.[4]

---

[2] The defendant was found not guilty of assault with intent to commit a felony (kidnapping), G. L. c. 265, § 29.

[3] At the close of the Commonwealth's case, the defendant moved for required findings of not guilty on the three indictments.  The judge denied the motion.  The defendant again moved for required findings of not guilty at the conclusion of all of the evidence.  The judge took no action on the motion. After the jury's verdicts, the defendant filed a motion for required findings of not guilty on the two charges of which he was found guilty.  The judge denied the motion.

[4] After filing his notice of appeal, the defendant filed a motion for a new trial on grounds of newly discovered evidence and ineffective assistance of counsel.  He also filed a motion to vacate his conviction of attempted kidnapping on the ground that it was legally inconsistent with his acquittal on the charge of assault with intent to commit a felony.  A judge in the Superior Court (who was not the trial judge because he had

The Appeals Court affirmed the judgment on the indictment charging attempted kidnapping, concluding that the Commonwealth had proved all of the required elements of the offense. Commonwealth v. Sullivan, 84 Mass. App. Ct. 26, 28-30, 32 (2013). On the indictment charging accosting or annoying a person of the opposite sex, the Appeals Court reversed the judgment, set aside the verdict, and entered judgment for the defendant. Id. at 30-32. It concluded that because the Commonwealth had not demonstrated that the defendant's conduct involved "sexually explicit language or acts," the Commonwealth failed to meet its burden of proving that the defendant's conduct was "offensive." Id. at 30-31. We granted the Commonwealth's application for further appellate review, limited to issues pertaining to the defendant's conviction of accosting or annoying a person of the opposite sex under G. L. c. 272, § 53.[5] As to those issues, we affirm the judgment of conviction.[6]

retired) denied both motions. The Appeals Court consolidated the defendant's direct appeal with his appeal from the denials of his postconviction motions. Commonwealth v. Sullivan, 84 Mass. App. Ct. 26, 27 n.2 (2013).

[5] We acknowledge the amicus brief submitted in support of the defendant by the Massachusetts Association of Criminal Defense Lawyers.

[6] With regard to the other issues raised by the parties before the Appeals Court, the decision of the Appeals Court is final and binding.

1.  Background.  The facts as they properly could have been found by the jury are concisely set forth in the decision of the Appeals Court.  See Commonwealth v. Sullivan, 84 Mass. App. Ct. at 27-28.  We reiterate the essential details.

At approximately 9:30 P.M. on September 28, 2007, R.M. was walking alone on Massachusetts Avenue in Cambridge.  She was returning to her dormitory on the Massachusetts Institute of Technology campus after a Tae Kwon Do class.  The operator of a motor vehicle traveling on Massachusetts Avenue, whom R.M. later identified from a photographic array as the defendant, swerved toward her and stopped on the side of the road.  R.M. thought that he was going to ask for directions, so she took a step toward the vehicle.  The defendant rolled down the window and said, "Hey little girl, you look so tired.  Come on over.  Talk to me.  Let's, you know, let's talk."  R.M. described the pitch of his voice as "much higher than his normal tone of voice, more like, well, what you use to bribe someone."  She stepped back from the vehicle and started walking away because she "didn't want to have anything to do with that situation."  The defendant then got out of his vehicle while the engine was still running, and he walked toward R.M., asking her to come over and speak with him.  R.M. declined to engage him in conversation and attempted to move away.  The defendant came closer, causing R.M. to angle her body to avoid touching him.  Eventually, R.M.

managed to continue on her way, the defendant returned to his vehicle, and he drove away. The encounter, however, did not end there.

Apparently changing his mind about heading toward Boston, the defendant suddenly reversed his direction and followed R.M. in his vehicle as she turned onto Landsdowne Street, which at the time was dimly lit and devoid of other pedestrians. When he caught up to her, the defendant stopped abruptly and got out of his vehicle a second time. With the engine running and the car door open, he approached so closely that R.M. was aware of an unpleasant odor emanating from his body. The defendant sounded angry, and he demanded that R.M. "get in his car." Although he did not touch R.M., the defendant made a gesture like he wanted to put his arm around her shoulder and guide her toward his car. At this point, R.M. was "very scared." She moved away from the defendant, turning sideways on the sidewalk so she could "scootch" between the defendant and a wall that was behind her without touching him. As R.M. walked past the defendant, he started to follow her. R.M. then began reciting to herself the license plate number of the defendant's vehicle. At that point, the defendant "stormed off," got into his car, and left the scene. R.M. ran straight to her dormitory feeling "really, really, really scared," and the police were called.

2.  <u>Standard of review</u>.  Because the defendant has challenged the sufficiency of the evidence, we consider whether, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original).  <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 318-319 (1979).  A conviction may rest on circumstantial evidence alone, and the inferences drawn by a jury from the relevant evidence "need only be reasonable and possible and need not be necessary or inescapable."  <u>Commonwealth</u> v. <u>Longo</u>, 402 Mass. 482, 487 (1988), quoting <u>Commonwealth</u> v. <u>Casale</u>, 381 Mass. 167, 173 (1980).  The existence of conflicting evidence does not mandate a required finding of not guilty, see <u>Commonwealth</u> v. <u>Merry</u>, 453 Mass. 653, 662 (2009), and we do not weigh supporting evidence against conflicting evidence when considering whether the jury could have found each element of the charged crime. See <u>id</u>. at 660, citing <u>Commonwealth</u> v. <u>Lao</u>, 443 Mass. 770, 779 (2005).

3.  <u>Sufficiency of the evidence</u>.  General Laws c. 272, § 53, as amended through St. 1983, c. 66, § 1, states, in relevant part:  "[P]ersons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex . . . may be punished by imprisonment in a jail or house of

correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."[7] Under the statute, "offensive" and "disorderly" are separate and distinct elements, and the Commonwealth must prove both beyond a reasonable doubt to satisfy its evidentiary burden. See Commonwealth v. Lombard, 321 Mass. 294, 296 (1947). Moreover, "the Commonwealth has to prove that the defendant's behavior was offensive and disorderly to a reasonable person." Commonwealth v. Cahill, 446 Mass. 778, 781 (2006), citing Commonwealth v. Chou, 433 Mass. 229, 235 (2001). This is an objective standard. Cf. Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474-475, cert. denied, 513 U.S. 868 (1994) ("whether a reasonable woman seeking abortion services would be threatened, intimidated, or coerced by the defendants' conduct" is objective standard).

As to the first element of the crime, we have said that "offensive" acts or language "are those that cause 'displeasure, anger or resentment; esp., repugnant to the prevailing sense of what is decent or moral.'" Commonwealth v. Cahill, 446 Mass. at 781, quoting Black's Law Dictionary 1113 (8th ed. 2004) (defendant's act of grabbing victim from behind "really tight"

---

[7] The 2009 amendments to the statute, see St. 2009, c. 27, § 98, are not applicable to this case. In any event, the quoted language was retained in the amended statute, except that "may be punished" was changed to "shall be punished" (emphasis added). G. L. c. 272, § 53 (a).

around shoulders, at mutual place of business while she was helping customers, when viewed in context of defendant's other workplace behavior toward victim, was offensive within meaning of G. L. c. 272, § 53).  See Commonwealth v. Moran, 80 Mass. App. Ct. 8, 10 (2011), quoting Commonwealth v. Cahill, supra (fact finder could conclude that defendant's act of calling out to victim while passing within arm's reach, grabbing genital area of trousers, and mimicking masturbation constituted conduct "repugnant to the prevailing sense of what is decent or moral"); Commonwealth v. Whiting, 58 Mass. App. Ct. 918, 920 (2003) (evidence sufficient to support conviction of accosting or annoying person of opposite sex where defendant used sexually explicit language toward teenage girls, stepped out of vehicle, and pulled down pants, causing girls to fear that defendant would hurt them).  Thus, "offensive" acts or language cause a complainant to feel displeasure, anger, resentment, or the like, and such acts or language would be considered indecent or immoral by a reasonable person.

We interpret the "offensive" acts or language element of G. L. c. 272, § 53, as requiring proof of sexual conduct or language, either explicit or implicit.  Explicit behavior is self-explanatory.  By implicit sexual conduct or language, we mean that which a reasonable person would construe as having sexual connotations.  Our construction of the statute flows from

the fact that the proscribed acts or language must be directed at a "person[] of the opposite sex," thereby suggesting a sexual component to the crime.  See Commonwealth v. Rahim, 441 Mass. 273, 274 (2004), citing International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983) (recognizing that primary source of legislative intent is plain language of statute).  This sexual component defines the character of the wrongdoing.

Our interpretation is supported by the sexually dangerous person statute which, in 2004, added the crime of accosting or annoying persons of the opposite sex to the definition of "[s]exual offense."  G. L. c. 123A, § 1, as amended through St. 2004, c. 66, § 5.  To conclude that G. L. c. 272, § 53, also encompasses nonsexual behavior would result in absurd and unfair consequences.  For example, a defendant convicted of accosting or annoying a person of the opposite sex based on acts or language that were not sexual could nonetheless face civil commitment as a sexually dangerous person due to the classification of this crime as a "sexual offense" under G. L. c. 123A, § 1.  See Commonwealth v. Irene, 462 Mass. 600, 610, cert. denied, 133 S. Ct. 487 (2012), quoting Manning v. Boston Redev. Auth., 400 Mass. 444, 453 (1987) ("Statutes that relate to the same subject matter are not to be construed 'in a way that produces absurd or unreasonable results when a sensible construction is readily available'").  That the Legislature

classified the crime of accosting or annoying a person of the opposite sex as a sexual offense under the sexually dangerous person statute supports our conclusion that the Legislature intended the crime of accosting or annoying to require proof of sexual conduct or language.

As to the second element of the crime, "disorderly" acts or language "are those that involve fighting or threatening, violent or tumultuous behavior, or that create a hazardous or physically offensive condition for no legitimate purpose of the actor, whether the resulting harm is suffered in public by the public or in private by an individual." Commonwealth v. Chou, 433 Mass. at 233. See Commonwealth v. Cahill, 446 Mass. at 779, 781-783 (defendant's workplace behavior in forcing unwanted attention on victim, repeatedly asking for dates, approaching too closely so their bodies would graze, occasionally touching her back, and grabbing victim while saying, "I love you," was physically offensive and, therefore, disorderly within meaning of G. L. c. 272, § 53).[8] Cf. Commonwealth v. LePore, 40 Mass. App. Ct. 543, 546, 548 (1996) (removing victim's window screen and engaging in voyeurism, which has sexual connotations, created physically offensive condition that supported defendant's conviction of "being a disorderly person"). With

---

[8] In Commonwealth v. Cahill, 446 Mass. 778, 783 (2006), because we concluded that the defendant's act was physically offensive, we did not consider whether it also was threatening.

respect to the creation of a "physically offensive" condition under G. L. c. 272, § 53, "physical contact with a victim's person is not necessary to render one's actions physically offensive." Commonwealth v. Ramirez, 69 Mass. App. Ct. 9, 18 (2007), citing Commonwealth v. LePore, supra. However, a defendant must create a condition that would cause a reasonable person to fear imminent physical harm. See Commonwealth v. Cahill, supra; Commonwealth v. Whiting, 58 Mass. App. Ct. at 920. Contrast Commonwealth v. Chou, supra (defendant's conduct in making or hanging flyers containing sexually explicit language directed at female student did not create physically offensive condition); Commonwealth v. Ramirez, supra at 16, 18-19 (defendant's words and actions did not create physically offensive condition where defendant did not attempt to go near complainant, restrict her movement, follow her, or otherwise create physical offense).

As to "disorderly" acts or language that are threatening, we have recognized that "[s]exually explicit language, when directed at particular individuals in settings in which such communications are inappropriate and likely to cause severe distress, may be inherently threatening." Commonwealth v. Chou, 433 Mass. at 234-235 (defendant's act of posting flyers in high school containing sexually explicit and aggressive language directed at female student was threatening and, therefore,

disorderly within meaning of G. L. c. 272, § 53). Further, we have explained that "language properly may be understood and treated as a threat even in the absence of an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response." Id. at 234. See Commonwealth v. Moran, 80 Mass. App. Ct. at 10 (defendant's spontaneous suggestion of sexual activity delivered at close quarters but not involving physical contact supported finding that defendant had engaged in threatening behavior). When assessing whether acts or language create a physically offensive condition or are threatening, "context is critical." Commonwealth v. Ramirez, 69 Mass. App. Ct. at 16. See Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists, 23 F. Supp. 2d 1182, 1194 (D. Or. 1998) (whether "statement [is] innocent or threatening must be determined from the context in which it was made").

We conclude that, after viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the elements of accosting or annoying a person of the opposite sex beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. at 677. First, with respect to "offensive" acts or language, the circumstances surrounding the defendant's interactions with R.M. were such that a reasonable person would be upset, as R.M. was, and could legitimately construe the

defendant's behavior as implicitly suggesting an imminent sexual assault. R.M. was a young woman walking back to her dormitory alone around 9:30 P.M. on a September evening. When she initially encountered the defendant, he called her "little girl" and beckoned her to his car, using a high pitched tone of voice, so they could "talk." Not wanting to have anything to do with the defendant, R.M. started to walk away, but the defendant got out of his vehicle and pursued R.M., continuing to say, "Hey little girl, come on over," until he was finally standing within an arm's length of her.[9] When the defendant's entreaties proved unsuccessful, he returned to his vehicle and drove away, but then he reversed direction and proceeded to follow R.M. as she turned onto a dimly lit street devoid of other pedestrians. The defendant caught up to R.M., got out of his vehicle but left the door open and the engine running, approached R.M. so closely that she was aware of an unpleasant odor emanating from his body, and angrily demanded that she "get in his car." Given everything that transpired, a jury properly could have found that the defendant's acts or language were "offensive" beyond a reasonable doubt.

Next, with respect to "disorderly" acts or language, the circumstances surrounding the defendant's interactions with R.M.

---

[9] On cross-examination, R.M. testified that she did not remember the defendant asking her if she needed a ride or if she was hurt.

were such that a reasonable person would construe the defendant's behavior as creating a "physically offensive condition for no legitimate purpose." Commonwealth v. Chou, 433 Mass. at 233. Although the defendant did not touch R.M., his conduct "fairly bristled with menace." Commonwealth v. Moran, 80 Mass. App. Ct. at 10. In addition to the acts and language already described, including the defendant's aggressive vehicular pursuit of R.M., the defendant physically approached R.M., who was right in front of a wall, so closely that she was forced to turn and angle her body away from him in order to avoid touching him. While in such close proximity to R.M., the defendant was angry and demanding, and he gestured as if to place his arm around her shoulders and steer her toward his car. When R.M. managed to continue on her way, the defendant followed her until he heard R.M. reciting the license plate number of his vehicle, at which point he stormed off and drove away from the scene. R.M. then ran straight to her dormitory feeling "really, really, really scared." When considering the entirety of the encounter between the defendant and R.M., a jury properly could have found that the defendant's acts or language were "disorderly" beyond a reasonable doubt.

4. Ineffective assistance of counsel. Pertaining to his conviction of accosting or annoying a person of the opposite sex under G. L. c. 272, § 53, the defendant also contends that the

performance of his trial counsel was deficient in two respects. Both arguments are unpersuasive.

Counsel is ineffective when his or her performance falls "measurably below that which might be expected from an ordinarily fallible lawyer," and the substandard performance "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Claims of ineffective assistance of counsel typically should be raised, as they were here, in a motion for a new trial, where "an appropriate factual record can be developed." Commonwealth v. Diaz, 448 Mass. 286, 289 (2007). See note 4, supra. We review the denial of a motion for a new trial "only to determine whether there has been a significant error of law or other abuse of discretion. . . . When, as here, the motion judge did not preside at trial, . . . we regard ourselves in as good a position as the motion judge to assess the trial record." Commonwealth v. Grace, 397 Mass. 303, 307 (1986). A defendant seeking a new trial based on a claim of ineffective assistance of counsel bears the burden of establishing both prongs of the Saferian test. See Commonwealth v. Peloquin, 437 Mass. 204, 210 (2002).

The defendant first argues that his trial counsel was ineffective because he failed to file a motion to dismiss the charge of accosting or annoying a person of the opposite sex on

the ground that G. L. c. 272, § 53, is unconstitutionally vague. In the defendant's view, the statute establishes no meaningful, objective standard for what conduct might be deemed "accosting" or "annoying." Instead, he continues, what an individual considers to be accosting or annoying behavior depends entirely on that person's subjective sensitivities. We disagree.

It is well established that due process requires that criminal statutes which are not "sufficiently explicit to give clear warning as to proscribed activities" be declared unconstitutional. Commonwealth v. Orlando, 371 Mass. 732, 734 (1977). See Commonwealth v. Reyes, 464 Mass. 245, 248-249 (2013), and cases cited. However, "legislative language need not be afforded 'mathematical precision' in order to pass constitutional muster." Id. at 249, quoting Commonwealth v. Bohmer, 374 Mass. 368, 372 (1978). A statute is not vague "if it requires a person to conform his conduct to an imprecise but comprehensible normative standard so that men of common intelligence will know its meaning." Commonwealth v. Orlando, supra. A sufficiently definite warning about what conduct has been made criminal "may be achieved by the common law meaning or statutory history of particular terms." Commonwealth v. Balthazar, 366 Mass. 298, 300 (1974). See Commonwealth v. Reyes, supra.

As the motion judge correctly determined, G. L. c. 272, § 53, is not unconstitutionally vague because in order for accosting or annoying behavior to be criminal, it must be both "offensive" and "disorderly," and those terms have been defined and explained in our jurisprudence.  See, e.g., Commonwealth v. Cahill, 446 Mass. at 781-783; Commonwealth v. Chou, 433 Mass. at 231-235.  Put slightly differently, an individual who has engaged in offensive and disorderly acts or language toward a person of the opposite sex has accosted or annoyed that person. We conclude that trial counsel was not ineffective for failing to challenge the constitutionality of G. L. c. 272, § 53, in a motion to dismiss.

The defendant also argues that his trial counsel was ineffective because he failed to object to the judge's instruction on "accosting."[10]  The defendant contends that the

_____

[10] The judge's instruction on "accosting" was as follows:

"'Accosting' means in essence confronting.  The Government has to prove beyond a reasonable doubt that this confrontation was by conduct on the part of [the defendant] that was offensive and disorderly to a reasonable person. An offensive act causes real displeasure, anger, or resentment, and is repugnant to the prevailing sense of what is decent or moral.  Not all noxious or disturbing remarks are criminal threats.  The law does not punish boorish behavior per se.  It must be an offensive act, as I have defined it, or a disorderly act, namely behavior that creates a physically offensive condition for no legitimate purpose whether the resulting harm, if there is harm, is suffered in public by the public or in private by an individual.  It's not necessary that the offensive acts take place in private.  On the other hand, the statute, the

judge limited the definition of a "disorderly act" to the last prong of the definition set forth in Commonwealth v. Chou, 433 Mass. at 233, namely "behavior that creates a physically offensive condition for no legitimate purpose."  In so doing, the defendant continues, the judge essentially equated the "disorderly" element of the crime with the "offensive" element, even though they are separate elements and the Commonwealth has to prove both beyond a reasonable doubt to satisfy its evidentiary burden.  The defendant asserts that the incomplete definition of "disorderly" prejudiced his defense.  We disagree.

Although the judge did not give the entire definition of "disorderly" acts or language as articulated in Commonwealth v. Chou, supra, he gave the portion of the definition that was applicable to the evidence presented at trial.  As we have discussed, the defendant's interactions with R.M. were such that a reasonable person would construe the defendant's behavior as creating a "physically offensive condition for no legitimate purpose."  Commonwealth v. Chou, supra.  The judge's failure to

law, criminalizes offenses and disorderly conduct, or language as I have defined that, that has a personal and private rather than a necessarily public impact.

"It is up to you to consider all of the circumstances with respect to all three of the indictments, all of the circumstances when you're contemplating what the defendant's intent was, all of the circumstances when you are considering, with respect to 'accosting,' whether the behavior was, as I have said, oafish and gross, or whether on the other hand it was offensive and disorderly to a reasonable person."

itemize all of the alternative theories of the crime which had no application to this case was not error.  We conclude that the defendant has not shown that trial counsel's failure to object to the judge's instruction on "disorderly" acts constituted ineffective assistance.

5.  Conclusion.  The judgment of conviction on the indictment charging accosting or annoying a person of the opposite sex under G. L. c. 272, § 53, is affirmed.

So ordered.